James LOMAX, Plaintiff-Appellant,

v.

ARMSTRONG CORK COMPANY, Walter S. Radcliffe, Jr., and John N. Martin, Defendants-Appellees.

No. 28462.

United States Court of Appeals, Fifth Circuit.

Nov. 4, 1970.

Dixon L. Pyles, Pyles & Tucker, P. Zeb Jones, Travis, Stribling & Jones, Jackson, Miss., for plaintiff-appellant.

Melvin Bishop, Sullivan, Bishop, Jolly & Blount, Jackson, Miss., for defendants-appellees.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The appellant, plaintiff below, attacks a district court grant of summary judgment in favor of the defendants. We conclude that the district court's action passes muster, and affirm.

James Lomax brought an action pursuant to Section 301(a) of the National Labor Relations Act, Title 29, U.S.C. Section 185, against his former employer, Armstrong Cork Company (Armstrong) and Walter S. Radcliffe, Jr. and John N. Martin, plant manager and assistant plant manager respectively, of Armstrong's Jackson, Mississippi, operation for alleged wrongful discharge and violation of the collective bargaining agreement between Armstrong and the labor union of which Lomax is a member. The complaint prays for reinstate-

ment in appellant's former job, back pay and bonuses, restoration of all pension rights, seniority rights, disability benefits, life insurance premiums, hospital and surgical benefits, and any other rights which accrue to Lomax under the collective bargaining agreement and of which he was deprived because of the alleged improper dismissal. The complaint also seeks $10,000 damages because of alleged tortious conduct on the part of the defendants.

This action was filed initially in the Chancery Court of the First Judicial District of Hinds County, Mississippi. Through various procedural maneuvers with which we need not concern ourselves here, the action was once removed to the district court, then remanded, and removed a second time. Following the second removal, the defendants moved for and were granted summary judgment by the district court.

Lomax was employed as a production employee by Armstrong, and was a member of Local 363 of the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, the duly authorized bargaining unit for the production and maintenance employees at Armstrong's Jackson, Mississippi plant.

Article II(A) of the collective bargaining agreement between the union and Armstrong provided:

"Past plant practice in the interest of garnishments shall not be operative but shall be amended to the following: any employee whose wages are garnished twice within any three-year period shall be terminated if garnishments or similar wage attachments, follow judgments, or similar legal notice, within a year".

On February 11, 1965, a garnishment in the amount of $274 was served upon Armstrong as a result of a judgment against appellant, obtained by Swift Savings and Loan Company on July 7, 1961. On May 3, 1965, a second garnishment was served upon Armstrong as Lomax's employer in the amount of $206 resulting from a judgment against appellant obtained by IFC Loan Corpora-

tion on April 13, 1965. After an investigation by Armstrong to determine the validity of appellant's indebtedness to IFC Loan Corporation, the regularity of its judgment of April 13, 1965 against Lomax and the garnishment of May 3, 1965, following such judgment, Armstrong terminated the services of Lomax on May 7, 1965, for violation of Article II(A) of the existing contract.

The collective bargaining agreement provided the following grievance procedure:

(a) If a "complaint" is not "satisfactorily adjusted" between the employer and/or the union steward and the foreman concerned, it "shall" be reduced to writing by the union, in which case a "grievance" exists.

(b) The grievance is subject to "further discussion" between the foreman concerned and the department steward,

(c) Within seven days the Union's chief steward may refer the grievance to the general foreman or department head.

(d) Within seven days the plant bargaining committee of the union may refer the matter to the plant manager's office where it is to be discussed by the committee and the plant manager (or the assistant plant manager); within seven days of the last discussion the company must give a written decision on the grievance. Unless notice of intent to arbitrate is given within seven days the company's decision "shall thereupon become final."

On May 10, 1965, the appellant presented a written grievance to the union local and on that day the grievance was processed through the first two steps of the above-noted grievance procedure. On May 11, 1965, at the regular monthly meeting between the union and management officials, the third step of the grievance procedure was utilized. On May 12, 1965, plant manager Radcliffe notified the president of the union local that management considered that Lomax had been properly discharged and that no basis existed for the grievance.

The union subsequently investigated the case and informed Radcliffe that they had determined not to elect to send the grievance to arbitration. Pursuant to the grievance procedure, the company's decision became final seven days later, May 19, 1965.

On May 20, 1965, the appellant filed with the County Court of Hinds County, Mississippi, his petition and affidavit for writ of certiorari requesting that the judgment of April 13, 1965, in favor of IFC Loan Corporation, and rendered in the Justice of the Peace Court of District 5, Hinds County, Mississippi, be vacated and set aside. Of course, neither Armstrong, nor Radcliffe, nor Martin were parties to or on notice of this action. The writ was granted and on July 13, 1965, *by agreement between counsel* for IFC Loan Corporation and counsel for Lomax, the County Court entered judgment setting aside the previous judgment and resulting garnishment.[1] The County Court judgment of July 13, 1965, was then presented to the president of the union local, with appellant's assertion that the removal of this second garnishment necessitated a new union demand for Lomax's reinstatement. The union appeared to view the decision reached in May 1965 under the established grievance procedure as final and binding, and refused to take further action on Lomax's behalf. Thereafter this action was filed.

The court below granted the motion for summary judgment, concluding that no material issues of fact existed and that the defendants were entitled to judgment as a matter of law. The court stated:

"This Court reads Vaca v. Sipes, supra [386 U.S. 171, 85 [87] S.Ct. 903, 17

L.Ed.2d 842 (1967)], just as the Court did in Boone v. Armstrong Cork Company, supra [5 Cir. 1967, 385 [384] F.2d 285], that is, that a prerequisite to a Section 301(a) suit in this case is an allegation and proof that the union arbitrarily, discriminatorily or in bad faith failed to exhaust the contractual procedures. There is no such allegation in this action nor any proof offered in connection therewith or in support thereof, * * *"

We agree with the district court that there is no allegation of a union breach of the duty of fair representation, and that such absence is fatal to appellant's Section 301(a) claim. The Taft-Hartley Act recognizes that labor tranquillity promises best to be preserved by settlement machinery agreed upon by the parties. Title 29, U.S.C., § 173(d). Courts have given that policy effect by holding that if the bargaining agreement contemplates the use of a grievance procedure, an employee may not bring a court action for breach of contract without first resorting to the agreed-upon procedures. Vaca v. Sipes, supra; Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Haynes v. United States Pipe and Foundry Company, 5 Cir. 1966, 362 F.2d 414. Furthermore, where the grievance procedure provides that the decision is final and binding, the parties will be precluded from subsequently seeking an adjudication in the courts. *Haynes,* supra. *Vaca* further reinforces the Congressional policies of self-help in labor disputes and employee reliance on the chosen union representative to protect their interests by holding that even where a union does not prosecute a grievance to the full extent of the avail-

---

1. The consent judgment of July 13 stated that the garnishment proceedings were defective in several respects. However, in support of their motion for summary judgment the appellees presented the affidavit of Earl Keyes, the attorney for IFC Loan Corporation and the person who entered into the consent judgment on behalf of IFC. The affidavit states that to the best of Keyes' knowledge, the procedures utilized in the garnishment were regular, correct and legal, and that the agreement was entered into by IFC on the assurance of Lomax's attorney that IFC would be promptly paid and further that the removal of the garnishment would facilitate the appellant's reinstatement by Armstrong. Appellant did not counter the contents of this affidavit in the court below.

able contractual remedies, the employee may not bring a Section 301(a) action unless he can show that the union breached its duty of fair representation. Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory manner, an employee does not have an absolute right to have any grievance taken to arbitration, and the refusal of the union to take all grievances to arbitration does not per se amount to breach of the duty of fair representation. *Vaca,* supra. In view of the union's previous processing of Lomax's grievance to a final and binding stage and the non-adversary and perhaps collusive nature of the proceedings by which the second garnishment was set aside, it is not difficult to understand why the appellant chose not to allege a violation of the union's duty of fair representation.

■ We further agree with the district court that no material issues of fact exist which would prevent the district court from disposing of appellant's Section 301(a) claim on a motion for summary judgment. The appellant's contentions that the defendants acted improperly and maliciously in an alleged attempt to persuade the County Court to rescind its July 13 order setting aside the judgment and garnishment cannot seriously be considered as creating an issue of fact essential to the Section 301 (a) claim,[2] for proof of such action would not relieve appellant of his burden of showing a breach of the duty of fair representation on the part of the union.

■ We also deem inappropriate the appellant's alternative suggestion that we remand this case for arbitration as provided in the collective bargaining agreement, similar to the relief granted in *Boone,* supra. In *Boone* the bypass of the contract grievance procedure resulted from a mutual misunderstanding of the parties, and in that circumstance it seemed judicious to remand the matter to allow the parties the first opportunity to settle the dispute through their agreed-upon settlement procedure. Here the settlement machinery has been once utilized under circumstances where it has not been persuasively shown that any mistake of fact existed.

■ Although the district court's memorandum opinion and order discussed only appellant's Section 301(a) action, we construe the court's action as a dismissal *without prejudice* of any tort claims under Mississippi law which the appellant may have stated. This is material since Lomax also contends that the district court erroneously failed to take jurisdiction and decide these pendent claims. Error is not demonstrated in the lower court's decision not to exercise its discretionary power to hear the pendent claims. The controlling language is found in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966), where it was said:

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817; 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.* Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised,

---

2. These allegations might be relevant to appellant's pendent tort claims, however.

See our discussion of the district court's treatment of these pendent claims, *infra.*

or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. In the present case, for example, the allowable scope of the state claim implicates the federal doctrine of pre-emption; while this interrelationship does not create statutory federal question jurisdiction, Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126, its existence is relevant to the exercise of discretion. Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ.Proc. 42(b). If so, jurisdiction should ordinarily be refused". (Emphasis added)

Affirmed.