**LOCAL 368, UNITED FEDERATION OF ENGINEERS, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Plaintiff,**

v.

**WESTERN ELECTRIC COMPANY, INC., Defendant.**

Civ. A. No. 1517–70.

United States District Court,
D. New Jersey.

May 31, 1973.

652

Kapelsohn, Lerner, Leuchter, Reitman & Maisel, Newark, N. J. by Melvin Warshaw, Asst. Gen. Counsel, IUE International, Washington, D. C., for plaintiff.

Pitney, Hardin & Kipp by Edward P. Lynch, and S. Joseph Fortunato, Newark, N. J., for defendant.

LACEY, District Judge:

## FACTS

Defendant (hereinafter sometimes the Company) seeks summary judgment, or alternatively, partial summary judgment, under Fed.R.Civ.P. 56.

Plaintiff (hereinafter referred to as either plaintiff or Union), was formerly the exclusive bargaining representative for the professional engineers and engineering associates employed by defendant in its New Jersey plants. The instant litigation involves 11 of defendant's former engineering personnel.

Defendant, a New York corporation, is a manufacturing and supply unit of the Bell Telephone system.

The complaint alleges breach of the parties' collective bargaining agreement (Agreement), which became effective August 1, 1969, charging that defendant in 1970 improperly laid off the aforesaid 11 engineering personnel. The impropriety is said to be found in there being no lack of work at the time, contrary to defendant's position. Alternatively, the Union charges that even assuming lack of work, the said employees were selected for layoff status in violation of the criteria of Article 20 of the Agreement.[1]

1. Article 20 provides as follows: Movement of Personnel
1. The Company desires to maintain employment as near to a constant level as possible. The parties recognize, however, that the efficient operation of the business may necessitate reassignment of personnel or the addition to or decrease in the working force.

2. All adjustments to the working force in accordance with the provisions of this Article shall be initiated and made by the Company.
3. The Company and the Union recognize that consideration of individual merit and performance and TERM OF EMPLOYMENT is essential in determining those employees to be re-

Finally, the Union asserts there was in fact no layoff and that the men were discharged in violation of Article 22 of the Agreement.[2]

tained when business conditions require reduction in the working force.

3.1 When lack of work necessitates decreasing the working force, the employees to be LAID OFF will be determined by the Company on the basis of ability, performance, potentiality, TERM OF EMPLOYMENT, and the needs of the business. When, in the Company's judgment, two employees are substantially equal with respect to other qualifications, TERM OF EMPLOYMENT shall be controlling.

4. The transfer of employees between the various locations or divisions of the Company will be in accordance with the needs of the business. However, when such transfer would necessitate relocating the employee's family, due consideration shall be given by the Company to any case in which such a move would result in hardship.

5. If the Union objects to any move made in accordance with the provisions of this Article within ten (10) days after the effective date of such move, the matter may be processed in accordance with Article 23, GRIEVANCE PROCEDURE, but shall not be subject to the provisions of Article 24, ARBITRATION.

2. Article 20 provides as follows:
Suspensions and Termination of Employment—Relieved, Dropped, or Discharged

1. When the Company exercises its right to "Relieve," "Drop" or "Discharge" an employee, or when the Company suspends an employee for disciplinary reasons, the Union shall be notified of the action being taken by the Company as soon as practicable after the employee is notified. Such notice shall precede the effective date of the termination of employment except that when the Company considers it necessary to remove an employee immediately from the Company premises, it may do so without advance notice. In such a case the Union representative shall forthwith be notified.

2. An employee who has been "Relieved," "Dropped" or "Discharged" after the effective date of this Agreement may, if he complains that such action was unreasonably taken by the Company and notifies the Company in writing of such complaint within twenty (20) days after the effective date of such action, have such complaint considered in accordance with the procedures provided in Article 23, GRIEVANCE PROCEDURE.

2.1 An employee who has been suspended for disciplinary reasons may have such complaint considered in accordance with the procedures provided in Article 23, GRIEVANCE PROCEDURE.

3. If written demand for Arbitration is made upon the Company by the Union within ten (10) days after the grievance procedure has been exhausted, and provided the employee has a term of employment of more than six (6) months, the matter shall be referred to arbitration in accordance with the procedures and subject to the conditions provided in Article 24, ARBITRATION, further provided, however the authority of the Arbitrator shall in such case be further limited to a determination of whether or not the Company has acted unreasonably in "Relieving." "Dropping," "Discharging" or "Suspending" such employee.

4. Should the Arbitrator decide that the action of the Company was unreasonably taken, the employee shall be offered reinstatement and, if reinstated, shall, subject to the provisions of Paragraphs 5 and 6 below, be paid STRAIGHT TIME for time lost within his STANDARD WEEKLY WORK SCHEDULE less any amount paid to or received by the employee as wages in other employment and as unemployment benefits under any provisions of law, subsequent to the date of termination.

5. Any balance due to the Employee under Paragraph 4 shall be further reduced by any money other than wages received from the Company at the time of being "Relieved," "Dropped" "Discharged" or "Suspended". If this balance is reduced to zero without offsetting all such monies, the remaining money due the Company shall be considered as an advance in pay and shall be repayable through payroll deductions at the rate of ten per cent (10%) of such employee's wages.

6. If there is no balance due the employee under Paragraph 4, all monies other than wages, paid by the Company at the time of termination,

It is undisputed that on September 22, 1970, defendant notified plaintiff, by letter of Mr. J. J. Shaughnessy, its Director of Industrial Relations, that the following employees were to be laid off: Messrs. Mody, Newton, Khan, Marasigan, Nigro, Pytlik, Ching, Fers, Jarvis, Malinowski, and Orzynski.

On September 23, 1970, the Union responded by filing a grievance with defendant, complaining that the employees were really being replaced and not laid off as stated by defendant. Mr. Shaughnessy, by letter of October 15, 1970, reiterated that the employees involved were being laid off due to a lack of work, pursuant to the Article 20 criteria of the Agreement.

Plaintiff's complaint alleges that thereafter the Agreement's grievance procedures were "fully utilized" and that "no further steps" could be taken by the Union "under the grievance or arbitration provisions of the contract." Defendant's answer asserts, however, that the Agreement's grievance procedures were not completed or exhausted on behalf of any of the 11 men, and further, that in the case of 6 of the employees, no grievances were processed at all.

After the processing of at least some of the grievances, the Union then filed its complaint herein seeking essentially the following relief:

1. A judgment adjudging the defendant to be guilty of violating Article 20 of the agreement by separating the 11 employees from their work; also that they be reinstated without loss of seniority or loss of pay.

2. A judgment finding the Company in violation of Article 22 of the contract due to discharging the employees and refusing to arbitrate the propriety of the discharges; further, that the Company be ordered to submit to arbitration on the issue of whether the discharges were properly made pursuant to Articles 22 and 24 of the contract.

This suit alleges a violation of a labor contract between a certified bargaining representative and an employer. Plaintiff is a "labor organization" within the meaning of 29 U.S.C. § 152(5); and defendant is an "employer" within the statutory definition of 29 U.S.C. § 152(2), and in interstate commerce under 29 U.S.C. § 152(7). The Union has represented its members employed by the defendant within the District of New Jersey; therefore, this Court has subject matter jurisdiction over this suit and venue is proper. 29 U.S.C. § 185.

As previously stated, the Agreement became effective August 1, 1969, and was in force when the 11 named employees were separated from their employment on or about October 21, 1970.

■ The Agreement expired on December 6, 1971, and on August 29, 1972, the Union was decertified as the exclusive bargaining representative of defendant's engineering personnel. The complaint herein was filed on November 12, 1970. The subsequent expiration of the Agreement, and decertification, do not affect the Union's standing to prosecute claims that arose when the collective bargaining agreement was in effect. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); United States Gypsum Co. v. United Steelworkers of America, 384 F. 2d 38, 46 (5th Cir.), cert. denied, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed. 832 (1968).

Plaintiff during the various stages of this litigation has vacillated greatly in its position. Initially, as set out in its complaint, three contentions were asserted:

1. There was no true lack of work within the meaning of Article 20, because the work performed by the former employees continued to be done after their separation by other employees; further, there was other available work which the former employees were quali-

shall be considered as an advance in pay and shall be repayable through payroll deductions at the rate of ten

per cent (10%) of such employee's wages.

fied to perform, but that this employment was given to newly hired employees. [paragraph 9]

2. If there was a bona fide lack of work, then the former employees were not selected for layoff status according to the procedure provided for in Article 20. [paragraph 10]

3. The employees were in fact discharged and not laid off; further, the employer violated Article 22 by treating the employees as being laid off, thereby denying the Union the right to proceed to arbitration. [paragraph 11].

On March 8, 1971, on oral argument before Judge Reynier J. Wortendyke, Jr., the Union appeared in response to defendant's motion to dismiss the complaint.[3] Plaintiff abandoned its claim under paragraph 11, namely, that the men were discharged and not laid off, as is clearly evidenced by its counsel's statements to Judge Wortendyke (Tr. p. 24; March 8, 1971):

> And if your Honor sees fit, we would agree, your Honor, to striking Paragraph 11 from the complaint, because we believe that that is all the motion to dismiss goes to, is Paragraph 11.

During the same hearing (Tr. pp. 12, 15), the Union's position was that the lack of work issue was a fact question to be determined by the Court at trial; and the Union at that time apparently surrendered its claim to arbitration under Article 22.

The abandonment of paragraph 11 was affirmed by plaintiff's pre-trial memorandum of November 26, 1971 (p. 7) and again in plaintiff's pre-trial statement of January 12, 1973 (p. 8).

Consequently, the Union's position at that juncture of the litigation was to have the Court try the issue whether there was a lack of work or not, under the Agreement's Article 20, which precludes arbitration of the lack of work issue. The next step plaintiff, under its previously stated position, would have had this Court take (assuming a finding of lack of work) would be to determine whether the laid off employees were properly selected for layoff under the contract provisions covering employment separation. *See* plaintiff's pre-trial statement of January 12, 1973 (p. 9).

Now, incomprehensibly, against the foregoing background, the Union in its brief of January 29, 1973, in opposition to defendant's instant motion for summary judgment, alters its prior positions (Brief, pp. 2 and 26). It now contends that the lack of work issue is to be determined not by the Court, but by an arbitrator, a contention renewed on oral argument before this Court on January 31, 1973 (*see* Tr. pp. 16, 22; and see p. 25):

> The Court: Whether there was, in fact, a lack of work or not?
>
> Mr. Warshaw: Yes, your Honor, but the difficulty I have that is for an arbitrator to determine, not the Court, with all due deference—
>
> . . . .

During the same argument, the Union resurrected the previously discarded averments of paragraph 11 of the complaint (Tr. p. 16).

The Union's latest position is, therefore, that defendant's motion for summary judgment should be denied, and

---

3. 3. The motion sought dismissal of the action on the ground that the plaintiff had failed to exhaust its contractual remedies in accordance with the terms of the collective bargaining agreement between the parties. The Court denied the motion without prejudice to the right of the Company to renew the motion.

The Court noted at that time (Tr. p. 26):

It seems to me that the issues of fact, which stand out rather prominently in my mind, can be resolved by deposition and/or answers to interrogatories. With the advantage of that information, a motion for summary judgment might conceivably prevail. Upon the face of the complaint, it seems to me that the present motion to dismiss must be denied.

that this Court should order the case to arbitration for determination thereof whether there was a lack of work or not, and whether there has been any abandonment of claims or not.

The defendant contends that there is no material issue of fact in dispute before the Court; and that at issue is a matter of law, an interpretation of the Agreement relating to Article 20 thereof (not, it is noted, Article 22). Defendant predictably states that plaintiff has long since expressly abandoned its Article 22 allegation, as embodied in paragraph 11 of the complaint, and thus should be precluded from contending for arbitration now.

Putting its position affirmatively, defendant seeks summary judgment and dismissal of the Union's complaint because the Union now argues discharge rather than layoff; and, further, that a discharge is arbitrable under the Agreement only when, unlike here, the grievance procedure has been exhausted.

Defendant further states that the issue of whether a layoff was truly the basis for the dismissal (rather than discharge) is specifically made unarbitrable by the Agreement (see Article 24).

In summary then, the respective positions of the parties under the Agreement on the present motion can be essentially stated as follows: plaintiff would have the Court send the dispute to arbitration; defendant urges summary judgment dismissing the complaint and judgment that arbitration is precluded by the Agreement under the stipulated facts of this case.

■ A statement of certain fundamental legal principles is appropriate. A collective bargaining agreement is not an ordinary contract; it is intended to cover the whole employment relationship. John Wiley & Sons v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 11 L. Ed.2d 898 (1964); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578–581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Richardson v. Communication Workers of Amer-

ica, 443 F.2d 973, 978 (8th Cir. 1971); Roadway Express, Inc. v. General Teamsters, etc., Local 249, 330 F.2d 859 (3d Cir. 1964). Nonetheless, general canons of contractual construction and interpretation are not to be renounced in arriving at the parties' intended meaning as expressed therein in such an agreement. Independent Oil Wkrs. at Paulsboro, N. J. v. Mobil Oil Corp., 441 F.2d 651 (3d Cir. 1971); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969); see also 3 Corbin on Contracts § 535.

■ Federal courts have the responsibility for initially determining whether the parties have contractually agreed to arbitrate contested matters, and whether the appropriate arbitration clause on its face governs the dispute. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Avco Corp. v. Local Union No. 787 of Int. U., U.A.A.F.A. Imp. Wkrs., 459 F.2d 968, 973 (Cir. 1972); Philadelphia Lith. & Photo. Int. U.L. 7–P v. Parade Pub., Inc., 352 F.Supp. 634 (E.D.Pa.1972)..

Additionally, as noted by *Philadelphia Lith., supra,* at page 638:

. . . before the court can deny an order to arbitrate it must have "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," resolving any doubts in favor of coverage. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 581–583, 80 S. Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *Accord,* e. g. United Steelworkers of America v. Enterprise Wheel and Car Corp. 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–1321, 8 L.Ed.2d 462 (1962); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546–547, 84 S.Ct. 909, 912–913, 11 L.Ed.2d 898 (1964); Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 253–254, 90 S.Ct. 1583, 1594, 26 L.Ed. 2d 199 (1970); Avco Corp. v. Local

Union No. 787 of the International Union, U.A., A. & A. Imp. Wkrs., 459 F. 2d 968, 973 (3rd Cir. 1972). [footnote omitted].

The one contested matter the parties agree is properly before the Court is whether the action taken by the Company in laying off the 11 employees is subject to arbitration. The second contested matter, which the Company claims has been abandoned by the Union, is, if the separation from employment was other than a layoff (i. e., a discharge), can the propriety thereof now be determined by arbitration.

The Congressional policy encouraging arbitration as a means of settling labor disputes has been strongly supported by judicial decisions. *See* Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); Ice Cream Drivers and Employees U. Local 757 v. Borden, Inc., 433 F.2d 41 (2d Cir. 1970). In Price v. International Bro. of Teamsters, etc., 457 F.2d 605, 610 (3rd Cir. 1972), this policy was noted:

> In 1960, in the *Steelworkers trilogy* the Supreme Court reinforced the Congressional policy set out in Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d), that private dispute settlement was the desirable method for settling grievance disputes. The opinions stressed the utility of industrial self-government and the wisdom of having an arbitrator decide problems left by gaps in contracts. [footnote omitted]

As is evident, there is strong support for the federal policy that arbitration is favored in settling labor disputes. Avco Corp. v. Local U. No. 787 of Int. U., U. A., A.F.A. Imp. Wkrs., *supra*.

■ Recognizing this policy, it is nevertheless true that even though it

> is now firmly established that the policy of Federal Labor Law is to favor arbitration of disputes between labor and management, but since neither Congress nor the Supreme Court has gone so far as to require this proce-

dure in all cases, the sina qua non is a contract between the parties which binds them to this extra-judicial method of resolving disputes. [footnotes omitted]. Independent Oil Wkrs. at Paulsboro, N.J. v. Mobile Oil Corp., 441 F.2d 651 (3rd Cir. 1971), at 652.

It is clearly a matter for the court to determine whether or not the company is bound to arbitrate under the collective bargaining agreement. *Independent Oil Wkrs., supra* at 653. In making that determination the court will not rewrite the agreement and will not order arbitration in the absence of a contractual obligation to arbitrate. *Independent Oil Wkrs., supra; see also,* Boeing Company v. International Union, U.A., A. & A. Imp. Wkrs, 370 F.2d 969, 970 (3d Cir. 1967).

There are two approaches under which plaintiff apparently seeks to have this dispute arbitrated. First, arbitration should be ordered to determine if there was a lack of work and also to establish whether in the event of a lack of work whether the company applied the proper contractual standards in selecting the 11 men for layoff. Second, in the alternative, assuming no lack of work, the Union contends that the men were discharged or fired, a removal subject to arbitration. It is this second claim that defendant argues plaintiff has repeatedly abandoned.

The rights and duties of the parties as to arbitration under the Agreement are best determined by analyzing the appropriate contractual provisions and giving them the meaning reasonably intended by each side.

In conducting its business, the Company has the benefit of a broad management clause (Article 3) which reads:

ARTICLE 3—MANAGEMENT OF THE BUSINESS

Except as limited by the specific undertakings expressed in this Agreement, the COMPANY shall continue to have the right to take any action it deems appropriate in the management

of the business in accordance with its judgment.

The Company, in its letter of September 22, 1970, to the President of the Union gave notification that the 11 therein named employees were to be laid off. This notice was proper and in keeping with Article 6 of the Agreement which provides:

ARTICLE 6—NOTICES TO THE UNION

1. The employee's Supervisor shall notify the Union Representative designated by the Union, in advance when practicable, of the following:

   1.1 Transfers involving changes of an employee's status.

   1.2 LAYOFFS.

   1.3 Disciplinary Action.

2. In order to afford the Union an opportunity to arrange for such replacements as may be necessitated by the transfer of Union Representatives, the Company agrees to notify the Union in writing of the transfer of any Union Representative outside the recognized bargaining unit. Such notice shall be given as far in advance as possible, but not less than one (1) week prior to the effective date of the transfer.

The Union responded by the initiation of a grievance. Its letter of September 23, 1970, to Mr. Shaughnessy indicated that the Company had used "the pretense of 'Lack of Work'" to discharge these employees and replace them with newly hired engineering personnel.

The Company, by its letter of October 15, 1970, indicated that it was laying off the men due to a lack of work and was acting properly under Article 3 of the Agreement. Furthermore, the Company indicated that the 11 men were selected for layoff according to the Article 20 criteria.[4]

It should be indicated at this point, that the Agreement expressly defines the term "layoff." Article 5, § 1.7, provides:

LAYOFF OR LAID OFF

A termination of employment arising out of a reduction in the force due to a lack of work. Under the following circumstances an employee's service shall not be considered terminated by LAYOFF nor shall he be considered LAID OFF.

1. When his services are temporarily interrupted because of but not limited to such causes as material shortage, equipment failure, power failure, labor dispute, or other circumstances which cause a temporary cessation or reduction in operations;

2. When he is not reinstated from Leave of Absence.

The dispute between the parties centers on whether there was a lack of work or not and what contract remedies are available on the issue. It appears clear that the procedure for resolution of this controversy is provided for under Article 20, § 5, of the Agreement:

If the Union objects to any move made in accordance with the provisions of this Article within ten (10) days after the effective date of such move, the matter may be processed in accordance with Article 23, GRIEVANCE PROCEDURE, but shall not be subject to the provisions of Article 24, ARBITRATION.

Plaintiff's complaint (para. 8) alleges that the grievance procedure was pursued and utilized on behalf of the 11 employees and that since no further steps could be taken on their behalf under the grievance procedure, the suit was initiated.

Defendant's answer flatly denies exhaustion of the grievance procedure and, in its Fifth Separate Defense, the Company asserts that the grievances were not in fact fully processed, and that the

---

4. See footnote 1, *supra.*

status of each employee under the grievance procedure was as follows:

1. Fers, Malinowski—grievances were dropped after the first step;

2. Khon, Orzynski, Ching—grievances are yet to be processed through step 5;

3. Marasigan, Nigro, Pytlik, Mody, Jarvis, Newton—no grievances were processed at all.

The parties have signed a stipulation which affirms the foregoing grievance status; namely, that the grievance procedure was not fully utilized on behalf of 5 of the men, and not utilized at all on behalf of 6 of them. Thus, as to all of the 11 men, the grievance procedure was not fully completed through the 5-step contract requirement.

The Union would avoid this lack of exhaustion by the specious argument that Article 20, § 5, states that grievances may be processed in accordance with Article 23, Grievance Procedure. It then argues that "may be" is permissive but not mandatory, and that failure to do so is not fatal to its position now.

The Company, on the other hand, states that the plaintiff, because it elected not to complete the 5-step grievance procedure, failed to exhaust its contractual remedies and is barred from maintaining this litigation. Defendant further argues that, should the plaintiff's claim be arbitrable, plaintiff is barred from arbitration, again because of its failure to exhaust the Agreement's grievance procedure.

The separation from employment, if it was a layoff, is not subject to arbitration under the Agreement. A layoff of employees is a movement of personnel under Article 20. Pursuant to § 5 of that Article, the Union may process a grievance within 10 days of the layoff, but such a separation of employees "shall not be subject to the provisions of Article 24, Arbitration." As I have earlier demonstrated, the Union, at least at one point in this litigation, conceded that a layoff is not subject to arbitration. (See Tr. p. 15; March 8, 1971).

It must inevitably follow that the issue as to the existence of lack of work, to sustain a layoff, is covered by Article 20, which precludes arbitration thereof.

Additionally, plaintiff's interpretation of Article 20, § 5, suggesting that the pursuit of the grievance procedure is completely within its discretion, is untenable. If this construction were accepted, the Union members would have no recourse at all, within the confines of the Agreement at least, to contest a layoff, for Article 20 controversies are subject only to grievance proceedings, not arbitration. It is hardly compatible with other provisions of the Agreement, including the broad Management clause, to take the view that, if the Union eschews the grievance procedure, it can, at its whim, take the Company into court.[5] The sounder and more consistent "discretionary" nature of Article 20 is that either the Union may accept the decision of the Company to layoff as final, or it "may" protest and then invoke the grievance procedure. There is of course always judicial review, but obviously of narrow scope. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Ludwig Honold Mfg. Co. v.

---

5. The Company, in its Brief in support of this motion, aptly states as to this position (p. 24):

> While the Union concedes that the grievance procedure of the Agreement is mandatory concerning matters which are subject to binding arbitration of the Agreement (Union counsel's letter to the Court dated January 12, 1973, p. 7), the Union has contended that the same grievance procedure is not mandatory when a layoff dispute is involved

since the layoff dispute is not subject to binding arbitration. The Union's position is unsupported by logic. If as the Union contends, it has the right to litigate a layoff dispute, binding litigation is the analogous remedy to binding arbitration; the grievance procedure must be equally mandatory in either case. See Republic Steel v. Maddox, 379 U.S. 650 [85 S.Ct. 614, 13 L.Ed.2d 580] (1965).

Fletcher, *supra*; Newark Wire Cloth Co. v. United Steelworkers of Am., 339 F. Supp. 1207 (D.N.J.1972).

If the Union does file a grievance to challenge the Company's action, it must proceed pursuant to Article 23, which provides:

### ARTICLE 23—GRIEVANCE PROCEDURE

1. To provide for the expeditious and mutually satisfactory settlement of grievances arising with respect to wages, hours of work and other conditions of employment, the procedures hereinafter set forth shall be followed.

2. When an employee or group of employees wishes to have a grievance presented for settlement by the UNION, such grievance shall be presented as outlined below, and settlement effected at any one of the steps indicated:

### ORAL OR INFORMAL PROCEDURE

| Step | Representing the Union |
| --- | --- |
| (1) Discussion at Section Chief Level (when applicable) | One (1) Union Representative |
| (2) Discussion at Department Chief Level | One (1) Union Representative |
| (3) Discussion at Assistant Manager Level | Two (2) Union Representatives |

### WRITTEN OR FORMAL PROCEDURE

If a satisfactory settlement cannot be reached informally at Step 3 and the Union wishes to process the grievance further, the grievance shall be presented in writing at each step to the level of supervision indicated below:

| | |
| --- | --- |
| (4) Discussion at Manager Level | Same as Step (3) |

(5) Grievances not satisfactorily settled in accordance with the foregoing procedure may be presented in writing to the Company's Bargaining Agent by the Union's Bargaining Agent. In such event, not more than three (3) representatives of either party shall ordinarily participate in a discussion of a grievance.

3. Grievances will be answered by the Company orally at Steps (1) through (3) and in writing at Step (4) within ten (10) working days following the date of such presentations. Grievances presented at Step (5) will be answered in writing within ten (10) working days following the date of the final discussion of such grievances.

4. When the UNION wishes to process a grievance through a next higher step, it shall present it not later than ten (10) working days after receiving the COMPANY'S answer at the previous step, otherwise the grievance shall be considered closed.

5. Any individual employee or group of employees shall have the right at any time to present grievances to the COMPANY and to have such grievances adjusted, without the intervention of the UNION, as long as the adjustment is not inconsistent with the terms of this Agreement and provided that the UNION has been given opportunity to be present at such adjustment.

■ Private settlement of disputes, as provided for in a collective bargaining agreement, is favored. *See* United Steelworkers of America v. American Mfg. Co., *supra*; United Steelworkers of America v. Warrior & Gulf Navigation Co., *supra*; United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*; Price v. International Bro. of Teamsters, etc., *supra*. The private settlement must be determined by the court to be provided in the contract. As noted in Pullman, Inc. v. Internation-

al Bro. of Boilermakers, etc., 354 F. Supp. 496 (E.D.Pa.1972), at 499:

> And in International Union of Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed. 2d 248 (1972), the Supreme Court reiterated this position:
>
>> Of course, nothing we say here diminishes the responsibility of a court to determine whether a union and employer have agreed to arbitration. That issue, as well as the scope of the arbitration clause, remains a matter for judicial decision. See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962.) 406 U.S. at 491, 92 S.Ct. at 1713, 32 L. Ed.2d at 252.

■ Accordingly, because I find that the parties did provide through Article 23 for "private settlement" by grievance of an Article 20 dispute, and because the issue of whether there was a lack of work is such a dispute, I must hold that the Union's failure timely to comply with the private contractual remedies of the grievance proceedings under Article 23 bars it from maintaining this action for judicial relief.[6]

Accordingly, summary judgment pursuant to Fed.R.Civ.P. 56 is granted, in that the lack of work issue is nonarbitrable, and because the Union cannot maintain this litigation since it failed to exhaust the Agreement's grievance procedures. Lomax v. Armstrong Cork Co., 433 F.2d 1277, 1280 (5th Cir. 1970).

As noted before, the Union upon oral argument on January 31, 1973, on this motion for summary judgment, reversed its earlier position and revived its abandoned claim to assert that the "layoff" was in fact a discharge under Article 22 of the Agreement, and that the issue is arbitrable under Article 24. While a concession repeatedly made is binding upon the plaintiff, Halsted & Mitchell Co. v. United Steelworkers of Amer., 421 F.2d 1191, 1193–1194 (3d Cir. 1969), it is *appropriate that I nonetheless treat this latest position on the merits.*

■ Assuming that counsel had not abandoned the Article 22 claim, and is now entitled to raise it, it avails him nothing. The claim is still precluded from arbitration. In order to properly assert a claim for arbitration "the party seeking arbitration" must make a "claim which on its face is governed by the contract." United Steelworkers of America v. American Manufacturing Co., 363 U. S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed. 2d 1403 (1960).

Article 24 of the Agreement sets forth the conditions for arbitration:

ARTICLE 24—ARBITRATION

1. Any dispute arising between the UNION and the COMPANY with respect to the interpretation of any provision of this Agreement or the performance of any obligation hereunder, may be referred, during the life of this Agreement, to an Arbitrator in accordance with the procedure hereinafter set forth, provided:

(a) The procedure for the settlement of grievances, ARTICLE 23, GRIEVANCE PROCEDURE, has been exhausted, and

(b) Such dispute does not involve a provision of this Agreement which specifies that it is not subject to Arbitration, and

(c) The matter over which the dispute arose is not outside the provisions of this Agreement.

2. Either party may institute Arbitration proceedings not later than ten (10) days following the date of receipt of final answer of the other party in accordance with

---

6. This failure to exhaust Article 23 grievance procedures is so obviously a bar to judicial treatment *de novo* that it is no surprise that the Union now withdraws from its earlier position and, instead of seeking a decision on the merits in this Court, would pursue Article 24 arbitration. Yet Article 24 is as demanding of grievance exhaustion!

Paragraph 1(a) of this ARTICLE by written demand on the other party specifying the nature of such dispute and the reasons therefore, including reference to the specific provisions or provisions of this Agreement in dispute.

3. Each referral to Arbitration shall embrace but one (1) such matter in dispute, unless otherwise stipulated by agreement between the UNION and the COMPANY.

4. Within twenty (20) days following receipt of such written demand, the UNION and the COMPANY shall endeavor jointly to select an Arbitrator. If, within such period, the parties are unable to agree upon the selection of an Arbitrator, either party may request the FEDERAL MEDIATION AND CONCILIATION SERVICE to submit a list of nine (9) Arbitrators from which the parties may jointly make such selection. If the parties fail. to agree on the selection of an Arbitrator from this list, each party shall alternately strike one name each until but one name remains.

5. The Arbitrator shall have no authority to:

(a) Add to, subtract from or in any way modify the provisions of this Agreement; and

(b) Include in his award an obligation for the COMPANY to make any retroactive adjustment of pay for any period beyond (1) six months prior to date Arbitration decision is rendered or (2) date UNION submitted an initial written grievance as provided in ARTICLE 23, GRIEVANCE PROCEDURE, whichever period is shorter.

6. The decision of the Arbitrator made in compliance with the foregoing shall be final; shall be in writing; shall include the reasons for each finding and conclusion; and shall be rendered within thirty (30) days following the date of the last hearing conducted by the Arbitrator unless an extension is agreed upon by both parties. The parties agree to abide by such decision.

7. Each party shall pay its own expenses incurred in the Arbitration, including payment for time and expenses of its witnesses. All other direct expenses, including the fees and expenses of the Arbitrator, shall be borne equally by the UNION and the COMPANY.

Section 1(a) of Article 24 expressly provides that grievance procedures must be exhausted. That has not been done here, as was previously stated; this is undisputed as clearly set forth in the stipulated facts.

Additionally, there is nothing to substantiate that a written demand under section 2 was made by the Union as required.

Accordingly, were I to deal on the merits with the most recently asserted position of plaintiff, I would again determine the matter in favor of granting defendant's motion.

It is hereby ordered and adjudged that defendant's motion for summary judgment is granted, with costs, this 31st day of May, 1973.