I. KLAYMAN & COMPANY

v.

UNITED FOOD AND COMMERCIAL WORKERS LOCAL 190, AFL–CIO and United Food and Commercial Workers International Union, AFL–CIO.

Civ. A. No. 79–2874.

United States District Court,
E. D. Pennsylvania,
Civil Division.

May 6, 1980.

Herbert G. Keene, Philadelphia, Pa., for plaintiff.

Mark P. Muller, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Plaintiff instituted this action to recover damages it claims to have sustained as a result of the defendants' breach of the no-strike provision contained in the parties' collective bargaining agreement.

Defendants moved to dismiss the complaint on the ground that plaintiff was required to submit its damage claim to binding arbitration. By order dated February 1, 1980, I denied the motion to dismiss for the reason that the arbitration provisions of the contract applied to employee or union grievances only.

Thereafter, defendant filed an answer denying the substance of the plaintiff's complaint and, in addition, asserted a counterclaim for damages contending that the work stoppage was not a strike but a lockout in violation of the contractual no-lockout provision.

Before the court is the plaintiff's motion to dismiss the counterclaim on the ground that the union and its members failed to exhaust the remedies provided by the collective bargaining agreement.

The rationale underlying the ruling of February 11, 1980 is fairly straight for-

ward and begins with the proposition that ". . . arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962), quoting from *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). At the heart of the matter, therefore, is the language of the grievance and arbitration provisions contained in the parties' collective bargaining agreement. Section 2 of Article XI of the parties' collective bargaining agreement (pp. 17–18 of Exhibit "A" to plaintiff's Complaint) provides that any grievance relating to "the interpretation or application of this Agreement" shall be processed in the following manner:

(a) The grievance shall in the first instance be taken up with the foreman by the department steward. The foreman shall render a decision thereon as soon as possible . . . ;

(b) The grievance shall then be presented by the Shop Steward to the Plant Superintendent or his nominee . . . ;

(c) The grievance shall be referred to the appropriate Union official for presentation to the appropriate official of the Employer. . . . If no agreement is thus reached, arbitration may be requested within twenty (20) days of the event complained of. . . .

This language has been interpreted by the courts as not requiring an employer to submit a dispute and, in particular, a claim for damages resulting from an unlawful strike, to the grievance and arbitration procedure. In *Affiliated Food Distributors, Inc. v. Local Union No. 229*, 483 F.2d 418 (3rd Cir. 1973), *cert. den.*, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974), the employer brought an action against the union to recover damages for breach of the no-strike clause of its collective bargaining agreement. The union claimed that the parties had bound themselves to arbitrate any dispute. In reversing the district court's stay of the action pending arbitra-

tion, the Court of Appeals in analyzing the language contained in the agreement concluded:

Initially, any grievance 'may be taken up by the Union Steward(s) with a representative of the department involved, or with an official of the Company.' At the second stage, 'the Business Representative of the Union shall take the subject matter up with the Employer.' Thus, at both stages the initiative is with the union. It would be a strained construction at best which would attribute to the parties the thought that a company official would refer an *employer's* grievance to a union steward who would, in turn, refer the grievance to 'a representative of the department involved' or to 'an official of the Company'.

In short, we think it may be said with positive assurance, as in *Atkinson* [*Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962)], that the arbitration clause of this collective bargaining agreement is not susceptible of a fair construction that the parties bound themselves to arbitrate employer grievances of the kind here involved. 483 F.2d at 421. (Emphasis in original.)

To the same effect are Judge Cahn's decision in *Welded Tube Co. v. Electrical Workers*, 91 LRRM 2027 (E.D.Pa.1975), (". . . we find that a fair construction of the arbitration agreement shows with positive assurance that the parties did not intend to bind the company to arbitrate the dispute in question . . . .") and the decision in *Friedrich v. Local No. 780, IUE*, 515 F.2d 225 (5th Cir. 1975), (the grievance ". . . machinery is clearly oriented exclusively toward employee initiated disputes . . . . Such employer disputes as a claim for damages for breach of the no-strike clause was not intended to be resolved through these procedures . . . .").

■ But the same cannot be said of the union's or employees' claims for damages stemming from a lockout. Paragraph 14 of the counterclaim states:

772

As a direct and proximate result of plaintiff's unlawful action in violation of Article XI Section 1 of the collective bargaining agreement the members of Local 190 suffered damages . . ." (emphasis added).

This allegation raises an issue which is clearly encompassed by the grievance procedure spelled out in Article XI, Section 2 of the collective bargaining agreement. This dispute involves the claims of employees which the parties are contractually bound to arbitrate.

■■■ The strong policy of the law favoring arbitration precludes judicial relief where the party fails to fulfill a contractual obligation to arbitrate. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Price v. International Bro. of Teamsters, etc.*, 457 F.2d 605, 610 (3d Cir. 1972). A condition precedent for seeking judicial relief is that the remedies provided by the collective bargaining agreement be exhausted. *McConney v. Great Atlantic & Pacific Tea Co.*, 455 F.Supp. 1143, 1146 (E.D.Pa.1978); *see Ford v. General Electric Co.*, 395 F.2d 157 (7th Cir. 1968); *District 50 Allied and Technical Workers v. Brockway Pressed Metals, Inc.*, 328 F.Supp. 1258, 1260 (W.D.Pa.1971).

In *United Federation of Engineers v. Western Electric Co.*, 359 F.Supp. 651, 661 (D.N.J.1973) the court dismissed a union's complaint "because the union cannot maintain the litigation since it failed to exhaust the Agreement's grievance procedures." Judge Lacey stated: "I must hold that the Union's failure timely to comply with the private contractual remedies of the grievance proceedings . . . bars it from maintaining this action for judicial relief." *Id. See Lomax v. Armstrong Cork Co.*, 433 F.2d 1277, 1280 (5th Cir. 1970) (requiring exhaustion of contractual remedies as a prerequisite to suit); *Pittsburgh Die Sinkers Lodge No. 50 v. Pittsburgh Forgings Co.*, 255 F.Supp. 142, 146–147 (W.D.Pa.1966) (same); 51 C.J.S. Labor Relations § 413 p. 344 (same).

Finally, defendants in seeking to avoid a dismissal of the counterclaim assert that it was "filed in reaction to, and defense of, the plaintiff's action . . .". The dismissal of the counterclaim will not prevent defendants from defending against the plaintiff's claim on the ground that the work stoppage resulted from a lockout rather than a strike. Defendants simply are barred from asserting an affirmative claim for damages based on the work stoppage.