QUINN v POLICE OFFICERS LABOR COUNCIL

Docket No. 106159. Argued November 6, 1997 (Calendar No. 18). Decided
February 3, 1998.

Robert A. Quinn, a communications operator for the Port Huron
Police Department, filed a grievance against the department after
he was discharged for improper conduct. At the time the grievance
was filed, the Police Officers Labor Council was the exclusive rep-
resentative of the city's communications operators. While the griev-
ance was being processed the Police Officers Association of Michi-
gan replaced the Labor Council as the certified representative.
After each union asserted that the grievance was the responsibility
of the other, Quinn filed an unfair labor practice charge with the
Employment Relations Commission against both. A hearing referee
found that the Association, as the newly elected exclusive repre-
sentative, was responsible for processing the grievance and had
breached its duty of fair representation by failing to do so. The
MERC reversed. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and
TAYLOR and W. J. NYKAMP, JJ., reversed, holding that because MCL
423.211; MSA 17.455(11) provides that the elected representative is
the exclusive bargaining representative of public employees, the
Association became the exclusive representative upon certification,
and the Labor Council lost that status. The Court further deter-
mined that the Association owed a duty of fair representation to
the plaintiff once it was certified (Docket No. 179266). The Associ-
ation appeals.

In an opinion by Justice WEAVER, joined by Chief Justice MALLETT,
and Justices BRICKLEY, CAVANAGH, BOYLE, and KELLY, the Supreme
Court *held*:

The Police Officers Labor Council is responsible for pᵤrsuing the
grievance filed during its period of exclusive representation.

1. While a union's authority is premised on its status as an exclu-
sive representative, this principle fails to address adequately the
respective responsibilities of the decertified and newly certified
union in this case, and fails to balance the interests of the parties.
While decertification may change relations between and among
employer, union, and employees, it does not destroy the right to
redress arising under and relating to a valid preexisting contract.

The obligation to arbitrate grievances postcontract encompasses grievances involving employee rights that accrue or vest under the contract, or situations in which the parties expressly provided for arbitration beyond the term of the agreement, as the city did in this case.

2. The Labor Council, the exclusive representative at the time the plaintiff was discharged, filed the grievance, decided to arbitrate the grievance, selected the arbitrator, and set the date for arbitration. Although a new representative was subsequently certified, the Labor Council is in the best position to efficiently and knowledgeably see the grievance to its completion. Shifting the responsibility to the Association would improperly impose the Labor Council's judgment, contract interpretations, and financial considerations on the Association.

Reversed.

Justice TAYLOR took no part in the decision of this case.

216 Mich App 237; 548 NW2d 692 (1996) reversed.

*John A. Lyons; Paskin, Nagi & Baxter, P.C.*, of counsel (by *Jeannette A. Paskin* and *Daniel J. Seymour*), for Police Officers Labor Council.

*Frank A. Guido*, General Counsel, for Police Officers Association of Michigan.

Amicus Curiae:

*Hoekenga & Associates* (by *Daniel J. Hoekenga*) for Michigan Association of Police/Michigan Association of Public Employees.

WEAVER, J. We granted leave in this case to determine whether the Police Officers Labor Council or the Police Officers Association of Michigan (POAM) has the responsibility to pursue a grievance filed by plaintiff Quinn, who was discharged by the Port Huron Police Department. The Michigan Employment Relations Commission determined that the Labor Council was responsible for processing plaintiff's grievance. However, the Court of Appeals reversed

the MERC's decision and held that the POAM, the newly certified union, had the duty to continue Quinn's representation. We reverse the decision of the Court of Appeals and hold that the Labor Council is responsible for pursuing the grievance filed during its period of exclusive representation.

I

Plaintiff, who was a communications operator for the Port Huron Police Department, was discharged on August 25, 1992, for improper conduct. This conduct allegedly included gambling activities, misuse of emergency phone lines, and divulging confidential information to outside sources. On August 26, 1992, the Labor Council filed a grievance on plaintiff's behalf. At the time the grievance was filed, the Labor Council was the exclusive representative of the City of Port Huron communications operators. Although the collective bargaining agreement had expired on June 30, 1991, the city had agreed that the grievance procedure would continue after expiration of the contract. While the grievance was being processed, a petition was filed on September 21, 1992, to replace the Labor Council as the certified representative of communications operators. An election was held on October 27, 1992, and, on November 23, 1992, the MERC certified the POAM as the new exclusive representative.

On November 16, 1992, one week before the POAM's certification, the Labor Council sent a letter to the POAM advising it that plaintiff's grievance had been filed for arbitration and that the parties had agreed that Ildiko Knott would hear the matter on January 11, 1993. The letter indicated that because the

POAM had become the certified bargaining agent, the matter was now its responsibility. However, the POAM asserted that the grievance remained the Labor Council's responsibility.

Plaintiff stated that, in November 1992, he was notified that the Labor Council would no longer represent him and that the POAM would handle the matter. Plaintiff provided the POAM with his paperwork. He stated that, in December 1992, the POAM returned the paperwork and informed him that it was not responsible for processing the grievance. Plaintiff filed an unfair labor practice charge against both the Labor Council and the POAM on April 2, 1993.

A hearing referee recommended that the POAM, as the newly elected exclusive representative, was responsible for processing the grievance and had breached its duty of fair representation by failing to do so. The MERC disagreed with the hearing referee's recommendation and, in a two to one decision, ordered the Labor Council to process the grievance. The Court of Appeals reversed the MERC's decision. 216 Mich App 237; 548 NW2d 692 (1996). We granted leave to appeal. 454 Mich 906 (1997).

II

The MERC's factual findings are conclusive "if supported by competent, material, and substantial evidence on the record considered as a whole." *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 322; 550 NW2d 228 (1996). The MERC's legal rulings, which are accorded a lesser degree of deference, "are set aside if they are in violation of the constitution or a statute, or affected by a substantial and material error of law." *Id.* at 323.

The Court of Appeals noted that, under federal law, a union's duty of fair representation arises out of its authority as the exclusive bargaining representative. See *Adcox v Teledyne, Inc*, 21 F3d 1381, 1386 (CA 6, 1994); *Pratt v UAW Local 1435*, 939 F2d 385, 388 (CA 6, 1991).[1] The Court of Appeals determined that because MCL 423.211; MSA 17.455(11) provides that the elected representative is the exclusive bargaining representative of public employees, the POAM became the exclusive representative upon certification, and the Labor Council, consequently, lost such status. *Quinn, supra* at 240. Therefore, applying *Adcox* and *Pratt*, the Court determined that the POAM owed a duty of fair representation to plaintiff once it was certified. *Id.* The Court of Appeals rejected the POAM's policy concern that it should not be bound to pursue grievances filed by the Labor Council, noting that a new union must evaluate pending grievances to determine the proper course of action and that a union has authority to consider the merits of pending grievances. *Id.* at 240-241.

The Court of Appeals also noted that it had issued conflicting unpublished opinions regarding the matter. *Id.* at 238, n 1. In *Burns v Michigan AFSCME Joint Council 25*, issued April 5, 1989 (Docket No. 97420), the Court of Appeals accepted the decertified union's argument that the duty of fair representation ended with the union's decertification and its subsequent action to protect the plaintiffs' rights. However, in *Tucker v Michigan Ass'n of Public Employees*, issued

---

[1] Because our state labor statutes are patterned after the National Labor Relations Act, we examine federal construction of analogous provisions of the NLRA for guidance in construing our own labor statutes. *Demings v City of Ecorse*, 423 Mich 49, 56; 377 NW2d 275 (1985).

December 15, 1995 (Docket No. 166914), the Court rejected the union's argument that its duty of fair representation did not extend beyond the expiration of the collective bargaining agreement and the certification of a new exclusive bargaining representative.[2]

Although the Court of Appeals is correct that a union's authority is premised on its status as an exclusive representative, we find that this principle fails to adequately address the respective responsibilities of the decertified and the newly certified union in this situation and fails to balance the interests of the parties involved. In *United States Gypsum Co v United Steelworkers of America, AFL-CIO*, 384 F2d 38, 44-45 (CA 5, 1967), the successor purchaser of the employer's business argued that the union's decertification extinguished its obligation to recognize the union or to submit grievances asserted by the union under the contract to arbitration. The federal court rejected the successor's broad claim that, after decertification, the union had no right to enforce the agreement or any of its provisions. The court stated:

> It must be borne in mind that what we are talking about relates only to the right of the Union to act as the champion for the employees to assert their substantive rights under the contract. The duration in time of the substantive rights themselves is not affected by decertification. Decertification cannot ordinarily extinguish substantive rights. But it might have a powerful effect on whether the union can champion

---

[2]   We note that the NLRB has found that a predecessor union's refusal to process a pending grievance was not "so unreasonable as to violate its duty of fair representation" where the state of the law concerning its duty was unclear. See *Local 888, American Federation of Gov't Employees and Hector Gunaratne, Elsie Pascoe, and Charles Irizarry*, 323 NLRB 123; 1997 WL 253052, *7.

those rights. This problem essentially comes down to the judge-made balancing of competing factors.

On the one hand is the reflex to the statutory duty to deal only with the representative chosen by the majority. The duty to deal is strong. But no less stringent is the duty not to deal with one having only minority support. But to take the easy, almost mechanical, doctrinaire approach that loss of majority status extinguishes the union's power (duty) to act ignores other vital interests—indeed, interests which need protection and which will be lost unless an ardent advocate of them is available. [*Id.* at 45.]

The federal court determined that the union had the right to assert grievances for which effective relief was available before decertification. *Id.* at 46.

The federal court also rejected the argument that decertification deprived the union of standing to pursue a grievance in *International Union, United Automobile, Aerospace & Agricultural Independent Workers of America v Telex Computer Products, Inc*, 816 F2d 519, 522-524 (CA 10, 1987). The court stated that, while decertification may change relations between and among employer, union, and employees, it did not destroy "the right to redress arising under and relating to a valid preexisting contract." *Id.* at 523.[3] Although the collective bargaining agreement had expired in this case, the City of Port Huron had agreed that the grievance procedure would continue

---

[3] See also *Local 368, United Federation of Engineers, Int'l Union of Electrical, Radio & Machine Workers, AFL-CIO v Western Electric Co, Inc*, 359 F Supp 651, 654 (D NJ, 1973) (subsequent expiration of an agreement and decertification do not affect a union's standing to prosecute claims that arose when the agreement was in effect), and *United Steelworkers of America v Keystone Group*, unpublished opinion of the United States District Court, Southern District Indiana, 1985 WL 14179, *2 (SD Ind, 1985) (a union was not precluded from enforcing an agreement when a dispute arose before decertification).

after the contract's expiration. This Court has held that "[t]he obligation to arbitrate grievances postcontract encompasses grievances involving employee rights that accrue or vest under the contract, or situations in which the parties expressly provided for arbitration beyond the term of the agreement." *Gibraltar School Dist v Gibraltar MESPA-Transportation*, 443 Mich 326, 328; 505 NW2d 214 (1993).[4]

The *Telex* court, in recognizing the policy considerations that supported its decision to permit the union to pursue the grievance, stated:

> The Union negotiated the contract, administered it during its term, and is best situated to interpret and enforce its provisions advantageously for the employees, especially since no other labor organization has been selected by the employees. It also brought the grievance in question and is in the best position knowledgeably and efficiently to see it to completion, absent a showing that some other organization can and will do so. Since the Union is the named party to the contract, it is accorded the prima facie right to proceed under the contract against the employer. Further delays, confusion, and legal entanglements await any attempt to substitute parties or permit intervention by one or more employees who may be proceeding on an individual rather than collective interest basis. [*Id. at* 523-524.]

In the present case, the Labor Council, which was the exclusive representative when plaintiff was discharged, filed the grievance, decided to arbitrate the grievance, selected the arbitrator, and set the date for arbitration. Consequently, although a new representative was certified thereafter, the Labor Council is in the best position to efficiently and knowledgeably see

---

[4] In *Gibraltar, supra* at 329, this Court inferred that the expired contracts were not automatically renewed.

the grievance to its completion, and it would not effectuate the intent of the labor statutes to allow it to walk away from the grievance proceeding. Moreover, as noted in the MERC decision, shifting the responsibility from the Labor Council to the POAM improperly imposes the Labor Council's judgments, contract interpretations, and financial considerations made in this matter upon the POAM.

The grievance arose and was actively pursued while the Labor Council was the exclusive representative. Therefore, we reverse the decision of the Court of Appeals and conclude that the Labor Council has the obligation to process the grievance to its completion.[5]

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, and KELLY, JJ., concurred with WEAVER, J.

TAYLOR, J., took no part in the decision of this case.

---

[5] We note that nothing in this opinion should be construed as preventing the new representative from *voluntarily* assuming pursuit of existing grievances, provided the aggrieved employee or employees consent to the new representative's assumption of the duty. Further, we note that this situation does not concern a competing union claiming to be the contemporary bargaining representative.