**ENTERPRISE PUBLISHING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Newspaper Guild of Brockton, AFL–CIO, Intervenor.**

No. 73–1154.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1973.

Decided March 18, 1974.

Alvin M. Glazerman, Boston, Mass., with whom Snyder, Tepper & Berlin, Boston, Mass., was on brief, for petitioner.

Michael S. Winer, Attorney, Washington, D. C. with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Jay E. Shanklin, Atty., Washington, D. C., were on brief, for respondent.

John McMahon, Boston, Mass., with whom E. David Wanger and Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., were on brief, for The Brockton Newspaper Guild, AFL–CIO, intervenor.

Before COFFIN, Chief Judge, MOORE * and CAMPBELL, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal from a decision of the National Labor Relations Board (NLRB) not to decide alleged violations of §§ 8(b)(2) and (1)(A) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1970). Jurisdiction is found here under § 10(f) of the Act. Petitioner, Enterprise Publishing Company, a newspaper publisher in Brockton, Massachusetts, has had a collective bargaining agreement with its Union, The Brockton Newspaper Guild, AFL–CIO, the intervenor, for thirty-five years. This agreement provided that certain disputes would be sent to binding arbitration after a stated period of disagreement. The disputes included covered "any matter (1) involving the interpretation of any provision of this agreement or (2) involving the violation of any provision of this agreement . . . ." The agreement required that:

an employee who is or becomes a member of the Guild on the date to the signing of this contract or thereafter during its term shall maintain such membership in good standing . . . . during the term of this contract as a condition of continued employment.

In addition, the agreement provided that, prior to the expiration of the contract, negotiations for a new agreement could be initiated, the terms of the old agreement remaining in effect during the negotiations.

The old contract expired on April 23, 1970. Although negotiations for a new contract had started on March 11th, the new contract was not signed until October 23d. This new contract, in all respects significant here, was identical to the previous one.

In March, 1970, two employees, Marie Alden and Edna Cooley, told the Union that they wished to resign their membership. This request was denied. A further request to resign was denied on April 23d. Faced with these denials, the two stopped their payment of Union dues. In July a third employee, Gloria LeVasseur, also sought to resign. She, too, stopped paying her dues. The next month, however, she did apply for strike benefits and participated in a Union meeting.

The Union took no action until 1971. Then by a letter to the employees, dated January 18th of that year, and to the Company, dated February 23d, it was announced that the three employees in question were not members in good standing and that, unless their situation was remedied, the Union would seek their discharge pursuant to the membership clause in the new contract. The employees did not pay the back dues; the Union requested their discharge; the Company refused, stating the Company's belief that the Union's request was a violation of the NLRA. The Company then filed charges against the Union with the Board.

The Board, after a hearing, concluded that the issue before it, namely, whether the Union could properly require the firing of the three employees, boiled down "to a combination of factual determina-

* Of the Second Circuit, sitting by designation.

tions and questions of contract law and contractual interpretation, all matters fully cognizable by an arbitrator." The Board then, following principles set forth in Collyer Insulated Wire, 192 NLRB No. 150 (1971), dismissed the complaint pending submission of the dispute to the grievance procedure provided for in the contract. The Board did, however, retain jurisdiction for further consideration of the complaint if the grievance procedure, including binding arbitration, did not solve the dispute with reasonable speed or if the procedures were not fair and regular. It is this refusal on the part of the Board to decide the matter that is appealed here.

The *Collyer* case, *supra*, announced a policy on behalf of the Board to defer to arbitration in the resolution of some disputes cognizable by the Board. Whether a particular dispute would fall within the *Collyer* policy would be determined by the consideration of a number of factors, including a determination whether the dispute was one "well suited to resolution by arbitration", viz., "[t]he contract and its meaning in present circumstances lie at the center of [the] dispute." Further the dispute must arise "within the confines of a long and productive collective bargaining relationship." There must be "no claim . . . of enmity." Also, respondent must assert "its willingness to resort to arbitration," 192 NLRB at 842. In addition the Board will give consideration to whether the rights of each party to the dispute will be injured by its deference to an arbitration procedure. This *Collyer* doctrine has already been affirmed in Nabisco v. NLRB, 479 F.2d 770 (2d Cir. 1973). Petitioner here does not contest that the Board may, after consideration of the above factors, in its discretion defer to arbitration. (Petitioner's brief, at 8). However, it is contended that this discretion was misused in this instance.

■ It is first contended that any arbitration here could not be fair and regular since the employees involved in this dispute are opposed by their own bargaining agent. Although this is somewhat unusual, the Company's interest in the matter is similar to the employees' so that they are not, in fact, without representation. While it is argued that the Company's position may change, leaving the employees without a proper voice, the Board has maintained jurisdiction over the case and, thus, is in a position to insure that there be fair proceedings. Given these facts, we cannot say that the Board's decision to defer was improper.

■ Petitioner's second line of attack is that some issues, allegedly present in this case, involve interpretations of the NLRA and, thus, the case is beyond the authority of an arbitrator to adjudicate. Petitioner sets out three issues, each of which arguably presents a question of statutory interpretation.

The first statutory issue alleged is based upon §§ 8(b)(2) and 8(a)(3) of the Act which state that a Union can lawfully demand an employee's discharge pursuant to a Union security clause only where the employee fails to pay "periodic dues and * * * initiation fees uniformly required." In the present case the Union requested the discharge based on the failure of the employees to pay certain "periodic assessments." Thus, argues the Company, one must inquire whether the Union, in so doing, has violated the Act. This contention, however, ignores the preliminary factual question of whether these "periodic assessments" should be characterized as dues, these being regular payments for the maintenance of the organization, or assessments, these being a charge in the nature of a tax for a special purpose. NLRB v. Food Fair Stores, Inc., 307 F.2d 3, 11 (3d Cir. 1962).

The second suggested issue involves the question of whether the clause that provided that the terms of the old agreement would remain in effect during negotiations (extender clause) applies to the maintenance of membership clause. The Company contends that if the main-

tenance of membership clause is affected by the extender clause and since the negotiations could stretch on and on, the Board would have to decide whether an employee may lawfully be required, as a condition of employment, to maintain union membership pursuant to a clause that has no fixed time limitation. However, it is obvious that before the Board would be faced with this decision, a determination would have to be made as to the proper scope of the extender clause and this determination would be clearly contractual in nature.

The third issue raised by the Company presupposes that the extender clause does not apply to the maintenance of membership clause. Given this, it must be next decided whether the employees (especially LeVasseur) effectively resigned according to the relevant Union rules. Thus, each of these issues, before it rises to a statutory level, presents questions of fact and contractual interpretation. Since the Board will not defer to an arbitrator's decision which is repugnant to the Act, no prejudice will result from allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps, remove any need to consider the statute.

It is finally put forth that arbitration is the wrong solution to this matter since the Board has already heard the case on the merits. Certainly, after having held hearings, the Board does seem in a position to come to a speedy conclusion. Petitioner contends, at page 19 of his brief, that "it would do no violence to the *Collyer* doctrine to require the Board to decide this case on the merits." In this contention petitioner is wrong. *Collyer* stemmed from a general policy favoring arbitration which underlies the Act. NLRB v. Acme Industrial Co., 385 U.S. 432, 439, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). The Board has, in its discretion, determined that it is reasonable and proper to defer in this instance, and, it being clear that this discretion has not been misused, it would do violence to *Collyer* to require a decision from the Board at this time.[1]

The petition for review is denied.

---

1. A similar result has recently been reached in Associated Press v. National Labor Relations Board and Yancey v. National Labor Relations Board, 492 F.2d 662 (D.C.Cir. 1974).