INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA and ITS AMALGAMATED LOCAL UNION NO. 1369, Plaintiffs-Appellees,

v.

TELEX COMPUTER PRODUCTS, INC., Defendant-Appellant.

No. 84–2794.

United States Court of Appeals, Tenth Circuit.

April 13, 1987.

T. Chad Farris of Youngdahl, Youngdahl & Wright, P.A., Little Rock, Ark., for plaintiffs-appellees.

Thomas W. Craddock and Robert B. Krakow of Gibson, Dunn & Crutcher, Dallas, Tex., and Kenneth E. Ristau, Jr., Newport Beach, Cal., for defendant-appellant.

Before LOGAN, ANDERSON and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8(c). The cause is therefore ordered submitted without oral argument.

Telex Computer Products, Inc. appeals from an order of the district court requiring it to arbitrate a grievance pursuant to the terms of a collective bargaining agreement ("Agreement"). The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Its Amalgamated Local Union No. 1369 ("Union") brought this action to compel arbitration when Telex refused to arbitrate whether employees at its newly constructed plant at Owasso, Oklahoma, came under the Agreement.

The Agreement was for a term of approximately two years, expiring on June 24, 1985. It designated the Union as the exclusive bargaining agent for specified classifications of Telex workers "employed

at the company's establishments located in the metropolitan Tulsa, Oklahoma, area" (Article 2, section 2.1 of the Agreement), and it required arbitration of grievances unresolved through the grievance procedure (Articles 7 and 8 of the Agreement).

During the term of the Agreement, Telex opened the new facility in question at Owasso, Oklahoma. When it refused to recognize the Union as agent for employees at that facility, the Union filed a grievance under the Agreement, seeking recognition on the ground that the Owasso facility was within the metropolitan Tulsa, Oklahoma area. On May 21, 1984, the Union notified Telex of its desire to arbitrate the grievance. Telex refused contending that:

> [t]he determination of questions of representation, accretion and appropriate units does not depend upon contract interpretation, but involves the application of statutory policy, standards and criteria. The application of statutory policy, standards and criteria are matters for decision of the National Labor Relations Board rather than an arbitrator.

R.Vol. I at 44.

This suit to enforce arbitration was filed by the Union in federal district court on June 22, 1984. On cross-motions for summary judgment the district court ruled that the issue was limited to whether Telex had a duty to arbitrate grievances under the Agreement, leaving any necessary review of the merits of a decision in arbitration to future proceedings, such as an enforcement action. The court then held that Telex had a contractual duty to arbitrate and ordered it to do so. This appeal by Telex followed. All of these proceedings occurred while the Agreement was in effect.

In its briefs Telex has brought to our attention the fact that during the pendency of this appeal the Agreement expired and the Union was decertified following an election. Thus, in addition to challenging the judgment below, Telex now argues: (a) that it has no duty to arbitrate with a decertified union under an expired agreement; (b) expiration of the agreement and decertification of the Union have rendered the grievance moot; (c) it is impossible to accrete a group of employees to a non-existent bargaining unit; and (d) in any event, a decision for the Union in arbitration would result in an unfair labor practice (1) by permitting a decertified union to represent workers, contrary to their right under section 7 of the National Labor Relations Act (NLRA) to select their representatives and (2) by forcing Telex to bargain with an organization which does not lawfully represent the employees, in violation of section 8(b)(1)(A) of the NLRA.

Telex also presses on appeal its argument before the district court that arbitration is improper since a decision in favor of the Union could only lead to an unlawful result, i.e., accretion of employees in violation of their right to select their own bargaining agent. A corollary argument is that accretion issues must be decided by the National Labor Relations Board (NLRB).

The parties raise no factual issues, and we review the grant of summary judgment and the bare legal issues under the usual standards. On the basis of that review we affirm the order of the district court requiring arbitration.

## I.

Decertification of the Union and expiration of the Agreement occurred during this appeal. Telex contends that as a consequence, this proceeding has been rendered moot. These events are not part of the record and no formal motion has been made to include them. However, in their briefs both parties acknowledge and have argued the impact of expiration and decertification. The Union included a copy of the NLRB certification of the results of the election showing that Telex employees voted against union representation. The propriety of the election is not contested.

Mootness is jurisdictional. *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1968); *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d

347 (1963).[1] We are compelled to address a claim that the case has become moot regardless of the manner in which we are advised of the facts. *See* sources cited *supra* note 1. This case is moot if expiration of the Agreement has deprived the court of power to grant the relief requested. It is also moot as to the Union if the Union is found to have no legal interest in the outcome. Furthermore, even if expiration of the Agreement is determined not to affect rights secured by it during its term, the proceedings are subject to abatement (as distinguished from mootness) for want of a proper party capable of pursuing the suit.[2]

 We find no merit in Telex's contentions respecting mootness. Expiration of a collective bargaining agreement does not terminate rights and obligations arising under the contract during its term. The obligation to arbitrate survives expiration where (as here) "the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term." *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 251, 97 S.Ct. 1067, 1071–72, 51 L.Ed.2d 300 (1977) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)); *Steelworkers v. Enterprise Wheel & Car of Vistron Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 424 (1960); *International Ass'n of Machinists & Aerospace Workers, Local Lodge 2369 v. Oxco Brush Div.*, 517 F.2d 239, 242–243 (6th Cir.1975); *Procter & Gamble, Indep. Union v. Procter & Gamble Mfg. Co.*, 312 F.2d 181, 186 (2d Cir.1962), *cert. denied*,

374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). Even where a dispute arises after termination of a collective bargaining agreement the parties are obliged to arbitrate grievances under the agreement, as prescribed therein, unless "the presumptions favoring arbitrability ... [are] negated expressly or by clear implication." *Nolde Bros.*, 430 U.S. at 255, 97 S.Ct. at 1074. We hold, therefore, that these proceedings are unaffected by expiration of the Agreement between the Union and Telex.

Admittedly, decertification poses a different problem since it is directed not to whether disputes and procedures survive termination but to who may prosecute the dispute. Telex argues that the grievance, by its terms, is moot since it seeks recognition of the Union as a representative under Section 2 of the Agreement, and the employees have by election removed the Union as representative. Furthermore, regardless of the nature of the grievance, Telex argues that the decertified union has lost its standing to continue the dispute; Telex has no obligation to deal with the decertified union, and, in fact, it would constitute an unfair labor practice to do so.

 Those and related arguments fail for three reasons: first, the Union is a real party in interest to the Agreement, having substantial rights of its own thereunder, not the least of which concern potential dues and agency fees. The Agreement is not only specifically between the Union and Telex, but the Union is referred to both together with and as an entity separate from employees.[3] Article 1 of the Agree-

---

1. In the federal courts it is a constitutional requirement that the proceedings before those courts constitute "cases" and "controversies." U.S. Const. art. III, § 2. For an extended discussion of the point *see Powell v. McCormack*, 395 U.S. at 495–500, 89 S.Ct. at 1950–53, and authorities cited therein. *See also* Diamond, *Federal Jurisdiction to Decide Moot Cases*, 94 U.Pa.L.Rev. 125 (1946); Note, *Cases Moot on Appeal: A Limit on the Judicial Power*, 103 U.Pa. L.Rev. 772 (1955), and authorities cited and discussed therein.

2. See the discussion and cases collected in Note, *Cases Moot on Appeal: A Limit on the Judicial Power*, 103 U.Pa.L.Rev. at 775 n. 19.

3. Article 1 of the Agreement, for instance, provides:

 It is the general purpose of this Agreement to promote harmony and efficiency and improve the industrial and economic relationship between *the Company, its employees, and the Union;* to improve the quality of products produced and manufactured at the company; to prevent strikes, slowdowns, or other disturbances which would interfere with production; and to provide, as outlined herein, or-

ment specifically provides that the Agreement extends to "the prompt and equitable adjustment of grievances or complaints which may arise between the Company and *the Union* or any employee covered by this Agreement." R.Vol. I at 10 (emphasis added). The law is clear that rights and obligations arising under an Agreement survive termination, as explained in the preceding paragraphs. That principle would be rendered meaningless by a finding that although, as a named party and real party in interest, the Union has rights, it is prevented from pursuing them.

■ Second, decertification does not retroactively obliterate contract rights. Events which may change relations between and among employer, union, and employees may impact but do not destroy the right to redress arising under and relating to a valid preexisting contract. Thus, in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), a merger caused the union to lose its majority status, changed the employees' status, and introduced a new employer that was not even a signatory to the prior union contract. Yet the Supreme Court held that rights under the old contract survived and the new employer was required to recognize them. In short, the Union's action is at present directed solely to the Agreement and the time it was in force, including a grievance arising during that time. It was the authorized representative then and properly acts in that limited role now. In *United States Gypsum Co. v. United Steelworkers*, 384 F.2d 38 (5th Cir.1967), *cert. denied*, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832 (1968), the court stated:

> Since the union has presumably obtained the disputed "right" in the first instance by getting it in the contract, there does not seem to be any reason why it should not be the champion of that right when the controversy comes alive, certainly not where there is then no competing union claiming to be the contemporary bargaining representative.

This result obviously is called for as to those substantive rights which arise under the contract and ripen into some relief which becomes operative prior to decertification. Such grievances ... are ones which arose under the contract and for breach of which effective relief was available prior to decertification. With respect to grievances relief for which is operative up to the time of decertification the Union clearly has the right to assert them.

*Id.* at 46 (footnotes omitted). *See also Local 368, United Fed'n of Eng'rs v. Western Elec. Co.*, 359 F.Supp. 651, 654 (D.N.J. 1973) ("The subsequent expiration of the Agreement, and decertification, do not affect the Union's standing to prosecute claims that arose when the collective bargaining agreement was in effect."); *United Food & Commercial Workers Int'l Union v. Cudahy Co.*, No. 84–C–1377 (N.D.Ill. March 27, 1985) (WESTLAW, Dct database).

■ Third, continuity of rights arising under the Agreement, including at least a limited continuity of the Union's right to enforce the Agreement, is consistent with national labor policy, a subject which saturates this area of the law. *Bowen v. United States Postal Serv.*, 459 U.S. 212, 225–28, 103 S.Ct. 588, 596–98, 74 L.Ed.2d 402 (1983); *United Steelworkers v. Enterprise Wheel & Car of Vistron Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Union negotiated the contract, administered it during its term, and is best situated to interpret and enforce its provisions advantageously for the employees, especially since no other labor organization has been selected by the employees. It also brought the grievance in question and is in the best position knowledgeably and efficiently to

---

derly procedures for the prompt and equitable adjustment of grievances or complaints *which may arise between the Company and the Un-* *ion or any employee covered by this Agreement.* R.Vol. I at 10 (emphasis added).

see it to completion, absent a showing that some other organization can and will do so. Since the Union is the named party to the contract, it is accorded the prima facie right to proceed under the contract against the employer. Further delays, confusion, and legal entanglements await any attempt to substitute parties or permit intervention by one or more employees who may be proceeding on an individual rather than collective interest basis. As indicated, Telex employees have elected not to give exclusive representation to any organization. Thus, if the Union is now held powerless to act, who will act? It is entirely conceivable that employees who may wish to prosecute the grievance without union assistance may fear retaliation, or may lack funds for legal counsel or lack the knowledge or expertise in how to proceed, or they may proceed and fail because they fall into procedural default or legal error. Current employees may even be entirely ignorant of the Agreement, this dispute, and potential rights. *See generally John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United States Gypsum Co. v. United Steelworkers*, 384 F.2d 38 (5th Cir.1967), *cert. denied*, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832 (1968). Furthermore, it is no answer to those arguments that the grievance on its face seeks only Union recognition. Substantial rights of employees at the Owasso plant may be implicated by a finding of coverage to the date of contract expiration.

■ We hold, therefore, that decertification of the Union does not deprive it of its standing to pursue the grievance in question under and according to the terms of the Agreement, does not make it impossible for the court to grant the relief requested, and does not, therefore, render these proceedings moot. The same reasoning and conclusion apply to Telex's argument that it would constitute an unfair labor practice to deal with a decertified union, or to have the employees represented by it. As the Supreme Court stated in *John Wiley & Sons*, 376 U.S. at 551, 84 S.Ct. at 915: "this union does not assert that it has any bargaining rights independent of the Interscience Agreement; it seeks to arbitrate claims based on that Agreement, now expired, not to negotiate a new Agreement." *See United States Gypsum Co. v. United Steelworkers*, 384 F.2d 38 (5th Cir.1967), *cert. denied*, 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832 (1968); *Local 368, United Fed'n of Eng'rs v. Western Elec. Co.*, 359 F.Supp. 651, 654 (D.N.J. 1973).

■ Telex relies on *Glendale Mfg. Co. v. Local No. 520, Int'l Ladies' Garment Workers' Union*, 283 F.2d 936 (4th Cir. 1960), *cert. denied*, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961), and *ITT v. Local 400, Int'l Union of Elec., Radio & Machine Workers*, 248 F.Supp. 949 (D.N.J. 1965). In *Glendale* it was held that an employer could not be compelled to *bargain* with a decertified union following an arbitration award which provided for a reopening of wages. The case involved an enforcement proceeding. The district court in *ITT* indicated that a decertified union might be disqualified from arbitration. *Id.* at 950. However, the comment was dicta and relied directly on the authority of *Glendale*, which, as we have pointed out, stands for a proposition not presented in this case, i.e., active bargaining following an award. In any event, a later case from the same court stated a contrary view in a holding. *Western Elec.*, 359 F.Supp. at 654.

As it now stands the only question in this case is whether Telex has a duty to arbitrate the meaning of the metropolitan Tulsa area vis-a-vis its employees at the Owasso plant and the consequent Union recognition or failure of Union recognition under Article 2 of the Agreement. That is an essentially passive proceeding in and of itself. No bargaining or other such active employee representation, such as that referred to in *Glendale*, is involved, and the only time period implicated is the time period covered by the contract. Undoubtedly decertification of the Union creates some limitations,[4] but we decline to speculate in

---

4. *See generally Glendale Mfg. Co. v. Local No.* *520, Int'l Ladies' Garment Workers' Union*, 283

advance as to what those limitations might be, assuming any award in its favor.

## II.

In the district court Telex argued, and presses on appeal, that the grievance involves a "claim for representation of employees in an industry affecting commerce, over which matter the National Labor Relations Board has sole and exclusive jurisdiction." Answer, Affirmative Defenses at ¶ 2, R.Vol. I at 46. The question, according to Telex, is one of unlawful accretion, which raises both the issue of NLRB jurisdiction and a potential award in arbitration that unlawfully deprives employees of their right to choose their own representative.

▆▆▆ The district court concluded, and we agree, that the issue must be confined to whether the parties agreed to arbitrate this type of dispute—the threshold question being whether the grievance does indeed involve an interpretation of the Agreement. As is commonly pointed out in these types of cases:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. *It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.* Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

*United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960) (emphasis added). We agree with the district court that whether employees at the Owasso plant are within the "metropolitan Tulsa, Oklahoma, area" (the contract description) is a claim "which on its face is governed by the contract." *Id.*

▆▆▆ Of course, arbitration may not be compelled if the proceeding itself is unlawful, if a contract clause on its face violates federal labor law or national policy, or if no lawful award could be made by an arbitrator under any conceivable interpretation of the contract. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 77, 83–84, 102 S.Ct. 851, 856, 859–60, 70 L.Ed.2d 833 (1982); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964); *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

▆▆▆ The authorities cited by Telex do not support the propositions it advances. Matters touching on union representation, in the context presented here, are within the concurrent, not exclusive jurisdiction of the NLRB. If an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the NLRB will not deprive the parties of their bargain. *Carey,* 375 U.S. at 268, 272, 84 S.Ct. at 407, 409; *International Union v. E-Systems, Inc.,* 632 F.2d 487, 490 (5th Cir. Unit A 1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981). *See also Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros. Co.,* 725 F.2d 1088, 1090–91 (7th Cir.1982); *Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496 (9th Cir.1976); *International Union of Operating Eng'rs v. Sid Richardson Carbon Co.,* 471 F.2d 1175 (5th Cir.1973); *Local 12934, United Mine Workers v. Dow Corning Corp.,* 459 F.2d 221 (6th Cir.1972). In *International Ass'n of Machinists & Aerospace Workers, Local 2201 v. International Air Serv. of Puerto Rico, Inc.,* 636 F.2d 848 (1st Cir. 1980), the First Circuit explained the policy of allowing arbitration to proceed in cases such as this one:

> While it is possible to construe the relief sought [in this case] as calling for a determination of the scope of the bargaining unit represented, a task committed exclusively to the Board, labor policy supplies a preference for interpreting

F.2d 936 (4th Cir.1960), *cert. denied,* 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961).

questions as arbitrable in such a situation. As this court has noted as to analogous issues:

> "[E]ach of these issues, before it rises to a statutory level, presents questions of fact and contractual interpretation. Since the Board will not defer to an arbitrator's decision which is repugnant to the Act, no prejudice will result for allowing an arbitrator to clear up the factual and contractual underbrush and, perhaps, remove any need to consider the statute."

*Id.* at 849–50 (quoting *Enterprise Publishing Co. v. NLRB*, 493 F.2d 1024, 1027 (1st Cir.1974)). The NLRB itself has acknowledged that:

> It is by now well settled that there is ... a duality of issue where, as here, the matter in dispute is whether a collective-bargaining contract should be extended to a new operation, the issue before the arbitrator being whether the parties intended their contract to apply to such operation and that before the Board being whether the new employees might properly be treated as an accretion to the existing unit under criteria developed by the Board.

*Combustion Eng'g, Inc.*, 195 N.L.R.B. 909, 910 (1972). *See also Hershey Foods Corp.*, 208 N.L.R.B. 452, 457 (1974), *enforced without op., NLRB v. Hershey Corp.*, 506 F.2d 1052 (3rd Cir.1974); *Beacon Photo Serv., Inc.*, 163 N.L.R.B. 706 (1967).[5]

To the extent that the Union's grievance may ultimately deal with a question of accretion, Telex itself pointed out in its brief to the district court that the issue is highly factual in nature. R.Vol. I at 67–68 (listing nine factors which may be considered to determine whether a group of employees has been accreted to an existing bargaining unit, citing *Gould, Inc.*, 263 N.L.R.B. 442 (1982); *Save-It Discount Foods, Inc.*, 263 N.L.R.B. 689 (1982); *Mel-*

*bet Jewelry Co.*, 180 N.L.R.B. 107 (1969)). In any event, as to arguments by Telex with respect to the potential outcome of the arbitration, how the Union may ultimately fare on the merits is immaterial to our determination since "[t]he collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious." *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

There is nothing in this record which conclusively shows that an arbitrator could not interpret the disputed contract clause in a manner that would lawfully cover this grievance, or that arbitration itself is unlawful because jurisdiction rests exclusively with the NLRB. The Supreme Court has reminded us that "[d]oubts should be resolved in favor" of arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). We do so here.

## CONCLUSION

This proceeding is itself an argument in favor of arbitration of labor grievances. The inevitable delay of judicial administration has permitted the events which Telex now attempts to use in its favor, but which would not have been available to it had it not resisted arbitration when the request was timely made by the Union in the first instance. Telex may not be allowed to benefit by such delay. If, as Telex argues, the Union is attempting to overreach, such argument can be made to the arbitrator, who will be in a position to marshall and evaluate facts as well as the law.

We have considered all of the arguments advanced by the parties, addressing those

---

**5.** Telex cites several NLRB decisions to support its contention that the NLRB has exclusive jurisdiction over the dispute in this case. None of the cases cited by Telex, however, stand for the proposition that the dispute cannot be considered by an arbitrator in the first instance. In both NLRB cases cited by Telex in support of this argument, an arbitrator had already issued a ruling in the case. *See Mercury Marine Div.*, 254 N.L.R.B. 1120 (1981); *Marion Power Shovel Co.*, 230 N.L.R.B. 576 (1977) (citing *Combustion Eng'g and Hershey Foods* as its primary support). Like *Combustion Eng'g*, these decisions merely support the rule that the Board may not be bound by the arbitrator's findings and conclusions on the question of accretion.

we considered necessary. The judgment of the district court is affirmed.