09-3088-cv
Avedisian v. Quinnipiac Univ.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of July, two thousand ten.

PRESENT: REENA RAGGI,
     GERARD E. LYNCH,
     DENNY CHIN,
        *Circuit Judges.*

-------------------------------------------------------------------

LORI AVEDISIAN,

        *Plaintiff-Appellant*,

    v.           No. 09-3088-cv

QUINNIPIAC UNIVERSITY,

        *Defendant-Appellee*.

-------------------------------------------------------------------

APPEARING FOR APPELLANT:  CRAIG T. DICKINSON, Dickinson & Mallow, Waterbury, Connecticut.

APPEARING FOR APPELLEE:  AARON S. BAYER (Lawrence Peikes, Gregory A. Brown, *on the brief*), Wiggin and Dana LLP, New Haven, Connecticut.

Appeal from the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on July 6, 2009, is AFFIRMED.

Plaintiff Lori Avedisian appeals from an award of summary judgment in favor of defendant Quinnipiac University (the "University") on her state law claims alleging retaliation, see Conn. Gen. Stat. § 31-51q, and breach of contract.[1] We review a summary judgment award de novo, viewing the facts in the light most favorable to the non-moving party. See Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008). While we will not uphold an award of summary judgment in favor of the University if the evidence is sufficient to permit a reasonable jury to find for Avedisian, she must point to more than a scintilla of evidence in support of her claim to defeat summary judgment. See id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In applying these principles to this appeal, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] The district court also awarded the University summary judgment on Avedisian's intentional and negligent misrepresentation claims. Because Avedisian does not challenge that aspect of the award, our review is limited to the dismissal of the retaliation and breach of contract claims. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (noting that claims not raised on appeal are ordinarily waived).

2

1.      Retaliatory Discharge or Discipline

Conn. Gen. Stat. § 31-51q states that "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution . . . shall be liable to such employee for damages caused by such discipline or discharge."  Avedisian submits that the district court erred in concluding that the University's denial of tenure did not subject her to "discipline or discharge" within the meaning of that provision.  We disagree.

The proper interpretation of § 31-51q is a state law question that we review de novo, see Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006), guided by Connecticut case law, see Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 82 (2d Cir. 1995).  To the extent that case law is unsettled, "[o]ur role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law," National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos., 265 F.3d 97, 106 (2d Cir. 2001) (alteration and internal quotation marks omitted), but instead to "predict how the state's highest court would resolve" any identified uncertainty or ambiguity, Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 297 (2d Cir. 2000) (internal quotation marks omitted).  "In making this prediction, we give the fullest weight to pronouncements of the state's highest court, . . . while giving proper regard to relevant rulings of the state's lower courts."  Maska U.S., Inc. v. Kansa Gen. Ins. Co., 198 F.3d 74, 78 (2d Cir. 1999) (internal quotation marks omitted).

The Connecticut courts that have considered whether the denial of tenure or the failure to renew a nontenured faculty member's employment contract constitutes "discipline or discharge" within the meaning of § 31-51q have uniformly answered that question in the negative. See McIntyre v. Fairfield Univ., No. CV 02 0391471, 2003 WL 1090690, at *2-3 (Conn. Super. Ct. Mar. 3, 2003) (concluding that university had not "disciplined" plaintiff within meaning of § 31-51q by denying tenure and that such "denial . . . , as well as the non-renewal of [plaintiff's employment] contract[,] was not a discharge"); Douglas v. Bd. of Trustees, No. CV 95 0372571, 1999 WL 240736, at *3 (Conn. Super. Ct. Apr. 8, 1999) (holding that nontenured faculty member was not constructively discharged where he "never quit his employment" but board of trustees "simply did not rehire him at the termination of his contract"); see generally Bombalicki v. Pastore, No. 378772, 2000 WL 726839, at *1 (Conn. Super. Ct. May 10, 2000) (holding § 31-51q inapplicable to "employers who fail to promote employees because of the exercise of th[e] rights" enumerated therein). In light of this precedent, and in the absence of any contrary authority, we predict that, if presented with the issue, the Connecticut Supreme Court would agree.

The word "discipline" means "chastisement . . . imposed as a penance or as a penalty," Webster's Third New Int'l Dictionary 644 (1986), or "[p]unishment intended to correct or instruct[, especially] a sanction or penalty imposed after an official finding of misconduct," Black's Law Dictionary 531 (9th ed. 2009). As the court observed in Bombalicki v. Pastore,

4

discipline thus "involves affirmative acts of punishment that (at least while the punishment is being inflicted) leave the recipients in a less happy state than that which they enjoyed before the punishment began." 2000 WL 726839, at *3. Because Avedisian had no right to tenure, the University's decision simply maintained the status quo. It did not affirmatively punish or chastise her. Under these circumstances and consistent with the aforementioned precedent, we conclude that the Connecticut Supreme Court would not hold that the denial of tenure subjected Avedisian to discipline.

No different conclusion is warranted with respect to Avedisian's claim of discharge. The Connecticut Supreme Court has ruled that "an employee who resigns is not regarded as having been discharged" absent evidence of an employer "intentionally creat[ing] an intolerable work atmosphere that forces [the] employee to quit involuntarily." Brittell v. Dep't of Corr., 717 A.2d 1254, 1270 (Conn. 1998) (emphasis in original). Here, a collective bargaining agreement authorized the University to terminate Avedisian "at the end of a contract year in which there ha[d] been an evaluation of the [University's] need for . . . her services and of . . . her ability . . . pursuant to Article 10 for tenure." July 1, 1998 Collective Bargaining Agreement § 11.03. Instead, after denying tenure, the University renewed Avedisian's employment contract for an additional year.[2] Avedisian accepted the

_____

[2] Avedisian argues that the terms of the relevant collective bargaining agreement demonstrate that the denial of tenure constitutes a discharge for purposes of § 31-51q. We are not persuaded. Although the agreement states that "[a] Faculty Member who is denied tenure other than pursuant to Section 10.04, shall be terminated pursuant to Section 11.03,"

5

appointment but left the University several months later to take a position elsewhere. As Avedisian adduces no evidence sufficient to permit a rational factfinder to conclude that the University intentionally created a work environment so intolerable that she was forced to quit, we conclude she fails to state a claim for discharge.

Accordingly, the district court properly awarded the University summary judgment on Avedisian's § 31-51q claim.

2.     Breach of Contract

Avedisian's contention that the district court erred in concluding that her breach of contract claim was preempted by federal labor law is similarly without merit. Breach of contract claims "founded directly on rights created by collective-bargaining agreements," Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987), or "substantially dependent upon analysis of the terms of [such] agreement[s]," Allis-Chalmers Corp. v. Lueck, 471 U.S. 202,

---

July 1, 1998 Collective Bargaining Agreement § 10.05, Section 11.03 provides that a "non-tenured Faculty Member may be terminated" at the end of a contract year in which she has been evaluated for tenure, id. § 11.03 (emphasis added). That Avedisian's contract was renewed following the University's decision to deny her tenure undermines her claim that the denial of tenure is, for all intents and purposes, a discharge. It is of no moment that the letter offering to renew the contract stated that the renewed contract would constitute Avedisian's final reappointment. The University was not obligated to renew her contract at all, and its decision to do so on limited terms does not convert what would otherwise be a simple non-renewal of the parties' relationship into an actionable discharge. Cf. McIntyre v. Fairfield Univ., 2003 WL 1090690, at *2-3; Douglas v. Bd. of Trustees, 1999 WL 240736, at *3.

6

220 (1985), are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), see, e.g., Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003).

In this case, Avedisian alleges that the University breached its contract with her by arbitrarily "fail[ing] to award [her] tenure in accordance with the procedural provisions set forth in the contract." Compl. ¶ 21 (Count Two). It is undisputed that at all relevant times the tenure review process was governed by Article 10 of the collective bargaining agreement between the University and the faculty union. That collective bargaining agreement is therefore the source of the rights Avedisian seeks to vindicate. As Avedisian identifies no other "nonnegotiable rights" pertaining to the tenure review process that were "conferred on [her] as a matter of state law," Livadas v. Bradshaw, 512 U.S. 107, 123 (1994), we discern no error in the district court's conclusion that her breach of contract claim is preempted.[3] Cf.

_____

[3] Sometime after Avedisian was denied tenure, the operative collective bargaining agreement expired and the faculty union was decertified. Contrary to Avedisian's contention, these facts do not alter our conclusion. "Expiration of a collective bargaining agreement does not terminate rights and obligations arising under the contract during its term." International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Telex Computer Prods., Inc., 816 F.2d 519, 522 (10th Cir. 1987). Likewise, "decertification does not retroactively obliterate contract rights. Events which may change relations between and among employer, union, and employees may impact but do not destroy the right to redress arising under and relating to a valid preexisting contract." Id. at 523; see also United States Gypsum Co. v. United Steelworkers of Am., 384 F.2d 38, 44, 46 (5th Cir. 1967) (rejecting broad claim that "[u]nion, subsequent to its decertification, ha[d] no right to enforce the [relevant collective bargaining] agreement or any of its provisions" and permitting decertified union to assert grievances for relief that "arose under the contract and for breach of which effective relief was available prior to decertification"); American Fed'n of Gov't Emps. Local 888, 323 N.L.R.B. 717, 721 (1997) ("[S]uch events as the expiration of a collective-bargaining agreement or the removal of a collective-bargaining representative should not result in the employees' automatic loss of rights – including rights to arbitration of

7

Vera v. Saks & Co., 335 F.3d at 115 ("[I]f a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301."); Wynn v. AC Rochester, 273 F.3d 153, 159 (2d Cir. 2001) (holding fraudulent misrepresentation claim not preempted by § 301 where state law rather than collective bargaining agreement was source of rights asserted by plaintiffs). Accordingly, the claim was properly dismissed. See Allis-Chalmers Corp. v. Lueck, 471 U.S. at 220 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." (citation omitted)).

Avedisian argues that the University's failure (1) to perform certain promises made to induce her acceptance of employment, and (2) to abide by representations that she would satisfy the requirements for tenure by completing her then-pending research also supports her breach of contract claim. The district court, however, concluded that the contract claim at issue "ha[d] been expressly limited to a breach of the collective bargaining agreement between the faculty and Quinnipiac College." Oral Decision at 46-47 (July 6, 2009). As Avedisian does not challenge this finding on appeal, we do not reach the merits of her alternative breach of contract theories. See Gross v. Rell, 585 F.3d 72, 94 (2d Cir. 2009) (affirming dismissal of claims that "were waived below and . . . not discussed in the

grievances as provided for in a contractual arbitration clause – that [arose] under the agreement in question.").

8

plaintiff's opening brief on appeal"); <u>Norton v. Sam's Club</u>, 145 F.3d at 117 (noting that claims not raised on appeal are ordinarily waived).

3.      <u>Conclusion</u>

We have considered Avedisian's remaining arguments on appeal and conclude that they are without merit.  For the foregoing reasons, the July 6, 2009 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court
