**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STEEL WORKERS
LOCAL UNION NO. 348,

     Plaintiff - Appellee,

v.

MAGELLAN MIDSTREAM
HOLDINGS GP, LLC,

     Defendant - Appellant.

No. 15-3249
(D.C. No. 2:14-CV-02428-JTM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

A labor union (plaintiff) and employer (defendant) entered into a

collective bargaining agreement, but they disagree on whether this

agreement requires the employer to staff certain positions with union

workers. The issue on appeal is whether this disagreement falls within an

arbitration provision in the collective bargaining agreement. The district

_____

[*]    The parties have not requested oral argument, and we do not believe
it would be helpful. As a result, we are deciding the appeal based on the
briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value under
Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

court concluded that the dispute was subject to the arbitration provision and granted summary judgment to the union. We affirm because the collective bargaining agreement is susceptible to an interpretation that the arbitration provision covers the dispute.

## I. The parties disagreed on the need to arbitrate their dispute.

The employer owns and operates interstate pipeline systems. For these pipeline systems, the employer uses controllers who operate the pipelines through computer consoles.

This dispute centers on one console (Console No. 9) at the employer's Tulsa headquarters. At this console, the employer used six non-union employees. The union wanted the employer to use union workers for these positions and filed a grievance under the collective bargaining agreement, arguing that Article I of the agreement required the employer to use employees represented by the union.

The employer refused to process the grievance for three reasons: (1) the grievance was not substantively arbitrable because it raised an issue of union representation that was within the exclusive jurisdiction of the National Labor Relations Board (NLRB); (2) the arbitrability issue had already been determined in two binding arbitrations; and (3) the grievance was untimely. The employer added that it was unwilling to engage in arbitration, which was the next step in the collective bargaining agreement's dispute-resolution process.

The union filed this federal action to compel arbitration, and the parties filed cross-motions for summary judgment. The district court granted the union's motion, denied the employer's motion, and ordered the employer to submit the grievance to arbitration. The employer appeals.

## II. Our review of the district court's summary-judgment decision is de novo.

We engage in de novo review of the disposition of cross-motions for summary judgment, applying the same standard as the district court. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. The collective bargaining agreement can reasonably be read to require arbitration of this dispute.

Arbitration can be compelled only if the parties agreed to arbitrate the dispute. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The question here is whether the employer agreed to arbitrate the need to staff the six positions with union workers. We conclude that the employer agreed to arbitrate this type of dispute.

### A. We resolve doubts in favor of arbitrability.

In deciding whether a dispute is arbitrable, we must follow three guideposts. First, an "order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration

3

clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 582–83. Second, "[d]oubts should be resolved in favor of coverage." *Id.* at 583. Third, where the arbitration provision is broad and the collective bargaining agreement lacks "any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 584–85.

**B.    Article IX can reasonably be read to require arbitration.**

Article IX contains a dispute-resolution provision stating that "[a]ll complaints arising out of the interpretation or performance of [the collective bargaining agreement] shall be governed in the manner of the settlement by the terms of [the agreement] according to the following procedure." Appellant's App'x, vol. I at 57. The procedure begins with a grievance process. If that process does not fully resolve the dispute, either party can invoke arbitration under Article X, which states that the dispute "shall . . . be submitted to arbitration by an impartial arbitrator." *Id.* at 58.

Facially, these provisions indicate that if the grievance process does not fully resolve the disputes, the union can submit the dispute to an arbitrator. That being the case, we inquire only "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).

4

**C.    Article I does not foreclose arbitrability of this dispute.**

In arguing that the arbitration provision does not apply, the employer points to Article I, which addresses the types of employees subject to the collective bargaining agreement:

> [The collective bargaining agreement] shall include all operating and maintenance employees of [the employer] on the system of [the employer], including all pipelines, stations, and terminals and including all Mainline Controllers at [the employer's] general office, but excluding all other employees at [the employer's] general office and Region offices and all other supervisory employees. It is expressly understood in connection with this stated coverage that should any difference of opinion or dispute develop with reference thereto, the difference of opinion or dispute shall be determined solely from the language of the [NLRB] orders in the following numbered cases[,] . . . and shall not be determined in any manner by reference to the coverage stated above.

Appellant's App'x, vol. I at 49.

According to the employer, the second sentence requires use of NLRB orders to determine whether employees are covered by the collective bargaining agreement. Thus, the employer argues that coverage issues are determined by the NLRB rather than the arbitrator. In support, the employer notes Article X.2.'s limitation on the arbitrator's function: "The Arbitrator is restricted to interpreting, applying and determining any violation of the performance and/or provisions of [the collective bargaining agreement] and cannot add to, modify, delete, or otherwise change any provision of [the agreement]." *Id*. at 58. According to the employer, this language limits the arbitrator to interpreting the collective

5

bargaining agreement, preventing him or her from referring to the NLRB orders as required in Article I.

We disagree. Arbitrators are not limited to "interpreting" the collective bargaining agreement; they can also "apply[]" the agreement and "determin[e]" whether it has been violated. *Id.* If application of the agreement requires reference to certain NLRB orders, the arbitrator arguably must enjoy the power to refer to these orders. Therefore, the union's interpretation of the arbitration provision is at least reasonable.

The employer also argues that in the second paragraph of Article I, the parties recognized that the NLRB would be solely responsible for determining whether the collective bargaining agreement covers employees working in newly created consoles. The second paragraph provides:

> Other Coverage: If the Union is designated by the [NLRB] as the exclusive representative for the purpose of the collective bargaining for other operating units of [the employer], this [collective bargaining agreement] shall be extended to include such units for the classes of employees therein covered.

*Id.* at 49. This language does not give the NLRB exclusive responsibility for determining whether the collective bargaining agreement applies. Instead, this language describes what happens "[i]f" the NLRB designates the union "as the exclusive representative" for the employer's "other operating units." *Id.* And the provision does not state that the NLRB would bear sole responsibility for making this determination.

6

**D. The nature of the underlying NLRB proceedings is irrelevant to our assessment of the order compelling arbitration.**

The employer also contends that because the NLRB orders specified in Article I were entered in proceedings concerning representational elections, submitting the grievance to arbitration would violate the workers' right to vote on union representation. This argument goes to the merits of the union's grievance, which is not at issue in the appeal. *See Int'l Union, UAW v. Telex Comput. Prods., Inc.*, 816 F.2d 519, 526 (10th Cir. 1987) ("[H]ow the Union may ultimately fare on the merits is immaterial to our determination since 'the collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious.'" (brackets omitted) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960))). If the specified NLRB orders require an election, the collective bargaining agreement would allow the arbitrator to apply that requirement.

**E. The outcomes of prior arbitrations do not affect the outcome here.**

Finally, the parties point to three prior arbitration decisions involving similar grievances. In two of those, the arbitrator concluded that the NLRB had exclusive jurisdiction. In the other, the arbitrator exercised jurisdiction and decided in the union's favor. We need not decide which of

7

the prior arbitration decisions was correct, for our only task is to determine whether the parties agreed to submit this grievance to arbitration. *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960).

## IV. Disposition

We affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge

8